NOLAN COUNTY v. THE STATE OF TEXAS.

No. 3404.

1. **County Bonds.**—It may be considered settled law in this State that one of its counties can not issue bonds without an act of the Legislature conferring that power.

2. **Authority to Issue Court House Bonds.**—The Act of February 11, 1881 (Gen. Laws 1881, p. 5), authorizing "the County Commissioners Court of any county which has no court house at its county seat" to issue bonds to defray expense of building such house, applied only to counties having no court house, and it did not confer power to issue bonds for the erection of a jail; nor would it authorize the issue of bonds for purpose of building a temporary structure to be used until a court house could be erected.

3. **Court House—Jail.**—A building intended for a jail, but to be used temporarily as a court house, can not be deemed a court house within the meaning of the said

Act of February 11, 1881; and until its amendment February, 1884 (Acts Special Session 1884, p. 28), counties could not legally issue bonds for building a jail.

4.  **Irregular Issue of Bonds—Bona Fide Holder.**—Nolan County issued certain bonds to contractors who had built a jail for the county.  There was no court house at the time in the county.  They were payable to bearer; they recited that they were issued for the purpose of building a court house for the county; they purported to have been issued under the Act of February 11, 1881, and to have been registered by the treasurer of the county.  The purchasing agents of the State had no actual notice of any fact that would impair the validity of the bonds.  *Held,* that the county was obliged to pay such of said bonds as were bought for the State as an investment of the State school fund.

5.  **Recitals in Contracts — Estoppel.** — If a purchaser were bound to inquire into the existence of the fact which empowered the court to issue bonds to build a court house, and to know that the county had no court house, in view of the recitals upon the face of the obligations he was bound to look no further.  He had the right to rely upon the truth of such recitals, and having paid value for the bonds without actual knowledge of their illegality, the county would be estopped to set up that they were not issued for the purpose for which they purported to be issued.

6.  **Limit of Legal Issue of Bonds—Valuation of Property.**—In The Citizens Bank v. City of Terrell, 78 Texas, 450, section 8 of article 14 of the State Constitution as amended in 1883 was construed, and it was held that the amount of indebtedness which counties, towns, and cities were authorized to create for the erection of public buildings was limited to such amount that its interest and sinking fund could be paid by a tax of 25 cents upon the $100 of property, as shown by the assessment rolls of the municipality.  The word "valuation" as used in the section was held to mean the value as fixed by competent authority for the purposes of taxation.  The power of issuing bonds being so limited as to the amount by the official assessment, the Commissioners Court was not authorized to look beyond it to determine the extent of their power from other data within their reach.  In such case recitals could not extend the limit so determined.

7.  **Bonds in Excess of Limit.**—A series of bonds issued for a real indebtedness payable to bearer and in hands of a bona fide holder, and in excess of the amount the county could legally issue, is valid pro rata to extent of indebtedness the County Court could create.

8.  **Counties Attached to Others for Judicial Purposes.**—A county attached for judicial purposes should bear the burdens of taxation to defray the ordinary expenses of county administration, but the assessed values in such county should not be considered in ascertaining the valuation of the taxable property as a basis for the creation of an indebtedness for permanent county buildings.

9.  **Negotiable Paper.** — The county having delivered to contractors in payment for work a series of bonds, and they being negotiable, it being shown that part of them are in hands of innocent holders, it will be presumed that the entire series have passed to bona fide holders in determining the amount of the indebtedness of the county when proceeding to a further issue of bonds.

10.  **Issue of Bonds Before Assessment for the Year.**—Until new assessment rolls have been examined, corrected, and approved by the board of equalization, the appraisement for the year can not be considered as definitely ascertained, and until so approved the valuation as a limit of bonded indebtedness created would be that of the year before.  Such bonds could gain no validity by the increased values not ascertained by the tax rolls.  See facts making an issue of bonds invalid.

11.  **Invalid Bonds.**—Bonds illegally issued can not be treated as legal in computing the indebtedness of the county when such county upon approval of its tax rolls

has power to enlarge its bonded indebtedness, and under such power regularly issues other bonds. See example where the last issue of a series held valid.

12. **Validating Act of Legislature.**—Where a contract which a municipal corporation has attempted to create is invalid merely for the want of legislative authority to create it, it can be made valid by a subsequent law: e. g., Act of March 24, 1885 (Gen. Laws, p. 41), validating certain county bonds.

13. **County Bonds Purchased by State.**—In said validating act there is nothing to indicate that it was not to be applied to bonds which may have been bought by the State after they had been transferred by the county to third parties. The object of the provision was to protect the school fund, and we see no reason why it was not intended to validate any county bonds held by the State for the benefit of its public schools, whether purchased directly from the county or from intermediate holders.

14. **Irregularities in Issue of County Bonds.**—The bonds by their terms were not redeemable until after the lapse of ten years, instead of "at the pleasure of the county," as prescribed by the statute. In Rock Creek v. Strong, 96 United States, 271, it was held that a similar irregularity did not render the bonds void. However this may be, the defect was certainly cured by the validating act.

15. **Ordering County Court to Levy Tax.**—The County Court had refused to levy a tax to pay the interest, etc., and had repudiated the debt. The members of the court were made parties to the suit. The court, in rendering judgment for the unpaid interest, properly ordered the county commissioners to levy and collect a tax to pay the amount of the recovery. No execution for the money could issue against the county.

APPEAL from Travis. Tried below before Hon. W. M. KEY.

By consent, the case was sent to the Galveston Term.

This was an action brought by the State to recover of Nolan County the amount of past due coupons upon certain bonds held by the State for the benefit of the school fund. The bonds purported to have been issued for the purpose of building a court house for the county.

The case was tried by the court without a jury upon an agreed statement of facts, and a judgment was rendered for the State for the full amount claimed.

So much of the agreed statement as is necessary for the purposes of this opinion is as follows:

1. The county of Nolan was organized in January, 1881, and the first term of its Commissioners Court was held the 28th day of the same month.

2. The total assessed value of property, as assessed for the county of Nolan for the year 1881, was $361,770, and of Fisher County, which was attached to Nolan County for judicial purposes, $222,359, which together amount to $584,129; and the same for the year 1882 for Nolan County was $908,276, and for Fisher County, assessed in Nolan County, $440,796, which together amount to $1,349,072; and for the year 1883 was $1,684,615.

3. On May 11, 1881, the Commissioners Court of Nolan County advertised for bids to build a jail not to exceed in cost $10,000, and on June 14,

1881, the plans of Martin, Burns & Johnson for said jail were adopted, and the contract was awarded to them at a cost of $8755, to be paid in coupon bonds of the county.

4.    That at the time of the construction of said jail, the same was constructed and intended for use as a jail and court house combined, to be used for both purposes until a separate court house should be constructed, at which time it was to be simply used for jail purposes; and on October 4, 1881, a committee was appointed by order of the Commissioners Court of Nolan County to see that the contract for court house and jail combined was properly carried out.

5.    On February 18, 1882, the Commissioners Court entered an order of record that a court house should be built at the county seat during the year 1882 at a cost not less than $20,000, and that $20,000 in fifteen-year coupon bonds, bearing 8 per cent interest, be issued at once and sold, and the proceeds applied to the building of the court house, said bonds to be redeemable at the pleasure of the county at any time after ten years from date; and J. W. Posey was appointed the agent of the county to sell said bonds at a commission of 10 per cent for his services, which commissions were to cover all costs of lithographing and disposing of bonds, including discount at which they were sold.

6.    On March 22, 1882, is was ordered by said court that the cost of the court house should not exceed $23,000, and said Posey was continued as agent of the county to sell the bonds, authorized to fill blank spaces in the same with names of purchasers, and 10 per cent commission awarded him; said commissions were to cover all discounts and costs of selling the bonds, so that they were to net the county, after paying all expenses of issuing, printing, and selling same, 90 cents on the dollar.

April 15, 1882, the Commissioners Court amended the order of March 22, 1882, so as to make the bonds redeemable at the pleasure of the county at any time after ten years, which had been interlined in the previous order also.    The $20,000 fifteen-year 8 per cent coupon bonds that had been printed under the original order were returned and destroyed, and it was ordered that twenty 8 per cent coupon bonds of $1000 each be lithographed and substituted for those returned and destroyed.

7.    On April 5, 1882, an order was entered receiving the jail as built by Martin, Burns & Johnson, and in payment therefor they received the coupon bonds for $8755—the bonds in this suit Nos. 1 to 4 inclusive being four of said bonds.

8.    On April 29, 1882, the contract for building the court house was let to J. M. Archer for $22,000.    June 19, 1882, it was ordered that seven $1000 bonds be issued in order to complete the court house, and that J. W. Posey be continued to negotiate the sale of the bonds as before.

9.   November 20, 1882, it was ordered by the Commissioners' Court that J. M. Archer, the contractor, be paid three bonds, Nos. 21, 22, and 23, at 90 cents on the dollar, to cover $2700 due him as payment for additional work on the court house over and above his said contract.

10.   On June 2, 1883, an order was made appointing W. B. Simpson & Co. agents, authorizing them to sell court house bonds Nos. 24, 25, and 26 for $1000 each.

11.   On November 8, 1883, three bonds of $1000 each, numbered respectively 28, 29, and 30, were by said court ordered to be issued to complete the court house, and ordered delivered to Thomas Trammel & Co., who agreed to sell the same to the State Comptroller for the usual interest.

12.   November 15, 1884, report of W. B. Simpson & Co. of the sale of bonds Nos. 24, 25, and 26 for $2900 was received, and 3 per cent commission thereon was allowed for the sale.

13.   From the county records it appears that bonds were issued as follows by the county of Nolan under the contract and orders aforesaid: . The first set of bonds for $8755, issued to Martin, Burns & Johnson on account of the jail; second set, first series of $20,000 court house bonds ordered sold by Posey, consisting of twenty bonds of $1000; third set of bonds, the three bonds Nos. 21, 22, and 23, awarded to J. M. Archer for additional work, for $1000 each; the fourth set of three bonds for $1000 each, numbered 28, 29, and 30, which were delivered to Thomas Trammel & Co. for sale to the State of Texas. There is one additional bond for $1000 there stated, but the numbers are confused. The registry of the county shows that thirty bonds for $1000 each were ordered issued, and of these only twenty-seven were actually entered in the registry book, to-wit, Nos. 1 to 27 inclusive. All were issued in 1882, and the three other bonds, Nos. 28, 29, and 30, now held and owned by the State of Texas as the property of the permanent free school fund, were issued about November 8, 1883. The Commissioners Court of Nolan County applied the proceeds arising from sale of court house bonds involved in this suit to construction of a court house for said county.

14.   The county's agent, J. W. Posey, had twenty-seven of these bonds delivered to him; twenty of them he sold to Matthews & Whitaker, of St. Louis, for 92 cents on the dollar; one to Flippen, Adoue & Lobit, of Dallas, for $850; he delivered three bonds ordered to be turned over to J. M. Archer at 90 cents on the dollar, and he returned three of the bonds to the county treasurer. These last three returned were the same afterward sold and delivered to Simpson & Co., as shown by the record.

15.   The records of the county treasurer of Nolan County show that court house bonds were registered as follows:   March 13, 1882, Nos. 1

to 20 inclusive, $1000 each—these bonds dated March 6, 1882, and registered March 13, 1882; and seven other bonds numbered from 21 to 27 inclusive, for $1000 each, dated April 10, 1882, and registered June 23, 1882. There are no other bonds on the registry.

16. On November 16, 1887, an order was entered by the Commissioners Court of Nolan County repudiating the entire issue of bonds.

17. On the 8th day of October, 1883, the State of Texas, in open market, and in the ordinary course of trade, and before their maturity, but not directly from the county or its agents, purchased Nolan County coupon bonds numbers 1 to 4 inclusive, for $1000 each, embraced in this suit.

On the 26th of September, 1883, the State of Texas, in open market and in the ordinary course of trade, but not directly from the county or its agents, and before their maturity, purchased Nolan County coupon bonds numbers 10 to 14 inclusive, for $1000 each, and embraced in this suit.

On the 15th day of December, 1883, the State of Texas purchased before maturity, and from the duly authorized and constituted agent of Nolan County, Nolan County coupon bonds numbers 28, 29, and 30, for $1000 each, and embraced in this suit. Bonds numbers 1 to 4 inclusive are payable to Martin, Burns & Johnson or bearer, and due ten years after date, but redeemable at any time at the pleasure of the county of Nolan. Bonds numbers 10 to 14 inclusive, and numbers 28, 29, and 30, are payable to bearer. The State of Texas, in purchasing each of said bonds, paid the full face and par value for the same. Said bonds were purchased with money belonging to the permanent public free school fund of the State of Texas, and were purchased as an investment of and for said fund, and said bonds are now, and have ever remained since said purchases, the property of the permanent public free school fund of the State of Texas.

Each of said bonds is of a denomination of $1000, and each bears interest at the rate of 8 per cent per annum from date until paid, interest payable on the 10th day of April of each year. Each of said bonds recites upon its face that it was issued for the purpose of erecting a court house for Nolan County, and that it was issued by authority and under the provisions of the Act of February 11, 1881, entitled "An act authorizing the County Commissioners Court of the several counties of this State to issue bonds for the erection of a court house, and to levy a tax to pay for the same," and in pursuance to an order of the Commissioners Court of Nolan County, passed at a regular term thereof, and duly entered upon the minutes of said court. Each of said bonds shows upon its face that it was signed by the county judge of Nolan County, countersigned by the county clerk of Nolan County, with the proper seal attached, and that each had been duly and properly registered by the treasurer of Nolan County. The coupons sued upon by

the State of Texas in this action were clipped from said bonds respectively, and represent the interest due on said bonds for the years ending April 10, 1888, and 1889.

18. The Commissioners Court of Nolan County sold and delivered all the bonds as recited above, receiving the purchase money or proceeds of said sale as stated in the foregoing memorandum, and used the same in money, and the bonds themselves, as shown by the proceedings of the court set out herein above, in the erection and construction of the jail and court house provided for by the orders aforesaid.

19. The county of Nolan levied and collected taxes necessary to pay, and has paid, the State of Texas all interest falling due upon each of the bonds sued upon in this action, regularly each year as the same became due, up to and including the year's interest due April 10, 1887. On April 10, 1888, Nolan County for the first time made default in the payment of the interest due on the bonds held and owned by the State as aforesaid, at which time it served upon the Comptroller of the State of Texas a copy of an order of the Commissioners Court of Nolan County, of date November 16, 1887, in which order said court officially, and on behalf of the county, repudiated said bonds and all interest accruing thereon.

20. It is admitted that each and all of the interest coupons sued upon by plaintiff in this case were, before the bringing of this action, properly and duly presented to the County Commissioners Court of Nolan County for allowance and payment, and that said Commissioners Court refused to audit, allow, or pay the same or any part thereof, but has wholly denied any obligation on the part of the said county on account of said bonds and coupons.

21. At the time of the purchase of said bonds by the State, in the manner and for the purposes aforesaid, the officers of the State authorized to and charged with the duty of making said purchases made no inquiry and had no actual knowledge whatsoever of the supposed defects, irregularities, or want of power to issue said bonds alleged by defendant to have attended or entered into their issuance, sale, or disposition, and that the only knowledge on their part is such, if any, as would be imputed by law to the recitals in the bond and the minutes of the Commissioners Court of Nolan County, and the assessment rolls of said county; and the question whether or not the law charges plaintiff with notice of the contents of said recitals, minutes, and rolls is left to the decision of the court, as well as whether or not the plaintiff in making the purchase of said bonds was bound to inquire into the condition of the county and the action of the Commissioners Court concerning the issuance of said bonds.

22. It is agreed that the building now used as a jail, and the erection of which was provided for by the county of Nolan, as herein above stated, and for which the bonds numbers 1, 2, 3, and 4 involved in this

suit were issued, was after its erection used both as a court house and jail combined, and continued to be so used until the court house was built, since which time it has been exclusively used for jail purposes.

23. If the court should hold that the plaintiff can recover in this suit, then it is admitted that there is of principal due on the coupons sued on the sum of $1920, with interest at the rate of 8 per cent per annum on $960 thereof from April 10, 1888, and with 8 per cent interest on the remaining $960 from April 10, 1889, to date of judgment. Total due to October 25, $2080.

24. The defendant expressly waives the defense to the jurisdiction of the District Court of Travis County, and consents to try and determine the case therein.

25. It is further agreed by and between the parties to this suit that the foregoing shall be and constitute all of the facts to be used on the trial of said cause, and that said cause may be tried and determined upon said facts and the law applicable to the same.

[This statement accompanied the opinion.]

*Cowan & Fisher* and *Leake, Shepard & Miller*, for appellant.—1. Nolan County had no implied power to issue the bonds, and there was no statute expressly conferring the same. Robertson v. Breedlove, 61 Texas, 316; Claiborne v. Brooks, 111 U. S., 400; Cole v. Milan, 127 U. S., 139.

2. The Act of 1881 was the only act in force at the time these bonds were issued, and it provided for the erection of court houses through the issuance and sale of bonds by such counties only as had no court house at their county seat. This act restricted the amount of the bonds to such sum as a tax of one-fourth of 1 per cent annually would liquidate in ten years, and provided, further, that the bonds should not run over fifteen years, and be payable at any time at the option of the county. Gen. Laws 1881, chap. 9, p. 5; Russell v. Cage, 66 Texas, 432; Dickson County v. Field, 111 U. S., 83.

3. The extent of the county's power is to be determined by a calculation based upon the interest borne by the bonds and the taxable wealth of the county at the time the issue of the bonds was provided for, the limit being such an amount as a tax of one-fourth of 1 per cent annually on such taxable wealth will pay off in ten years. Russell v. Cage, 66 Texas, 433.

4. The provision of the Constitution in force at the time of the issue of these bonds limited the amount of taxation for the payment of debts already incurred, and for the erection of public buildings, to a rate not to exceed 50 cents on the $100 in any one year, and the amount of indebtedness herein provided for was greater than could be paid off by such limit, and the bonds were therefore issued in express violation of the Constitution. Const. 1876, art. 8, sec. 9.

5. The amount of bonds issued by Nolan County being far in excess of the limit permitted either by the Constitution or the laws enacted thereunder, were absolute nullities in the hands of any purchaser thereof. Lake County v. Graham, 130 U. S., 674; Lake County v. Rollins, 130 U. S., 662; Dickson County v. Field, 111 U. S., 392; Buchanan v. Litchfield, 102 U. S., 278.

6. All the bonds issued for a particular purpose, or to carry out the purposes for which the bonds were originally provided, constitute one series, and must be considered together in ascertaining the limit of the county's power at the time.

7. The power of Nolan County to issue bonds at all was made to depend wholly upon the actual existence of the requisite facts at the time of the order authorizing the same, and no recitals in the bonds can relieve the purchasers thereof from an ascertainment of the existence of such facts as may be ascertained from the public records, which were accessible to all purchasers. Acts 1881, chap. 9, p. 5; Robertson v. Breedlove, 61 Texas, 316; Lake County v. Graham, 130 U. S., 674; Lake County v. Rollins, 139 U. S., 662; Bank v. Bergen County, 115 U. S., 384; Coler v. City of Cleburne, 131 U. S., 162; Russell v. Cage, 66 Texas, 432.

8. The purchasers of Nolan County bonds, whether direct or intermediate, are charged with notice of the existence of the law in force when the bonds were issued, and with notice of all that is contained in the minutes of the Commissioners Court, treasurer's register, and assessment rolls of the county. Anthony v. Jasper County, 101 U. S., 693; Coler v. City of Cleburne, 131 U. S., 162.

9. If the power to issue bonds had existed in the county, they would not be valid until signed by the county judge, countersigned by the county clerk, and registered by the county treasurer in the proper registry of the county kept for that purpose, before they are delivered to the purchaser. Acts 1881, chap. 9, p. 5; Anthony v. Jasper County, 101 U. S., 693; Coler v. City of Cleburne, 131 U. S., 162.

10. The Act of June 30, 1885, could not relate and give validity to these bonds. Because: (1) Retroactive legislation is expressly forbidden by the Constitution. Const., art. 1, sec. 15; Mellinger v. City of Houston, 68 Texas, 37, 44. (2) It is a palpable usurpation of judicial power, and therefore void. Shawnee County v. Carter, 2 Kans., 109; Sedg. Stat. and Const. Law, 2 ed., p. 143, and notes; Marshall v. Silliman, 61 Ill., 218, 227; Asbrook v. City of Milwaukee, 13 Wis., 42; Forster v. Forster, 121 Mass., 559, 561; Case of Supervisors of Election, 114 Mass., 247; Greenough v. Greenough, 11 Pa. St., 489; Hart v. Henderson, 17 Mich., 222. (3) It does not apply to any bonds other than those which may have been purchased by the State directly from the county authorities.

11.  The court erred in rendering judgment against the officers of the county of Nolan, ordering them to levy a tax for the purpose of paying the principal and interest of the bonds sued on.   (1) It was not proper to issue this peremptory order or mandamus until execution had been issued and returned unsatisfied.   (2) The tax required to pay the judgment would exceed the rate permitted either by the law or the Constitution now in force.

*J. S. Hogg*, Attorney-General, *R. H. Harrison*, Assistant, and *J. H. Robertson*, District Attorney, for appellee.—1.  The Commissioners Court having power to issue bonds to build a court house for Nolan County, and said court having exercised that power and issued the bonds in question, which upon their face recite in general terms that they are court house bonds and are issued in compliance with the law and in pursuance of the orders of the Commissioners Court, the plaintiff at the time of the purchase having no notice of any irregularity attending their issuance and sale, was not required to look behind the recitals in the bonds to see that either the money for which they were sold was used for the purpose of erecting a court house, or that the amount of bonds issued was in excess of the amount authorized by the taxable values of the county; and the defendant is estopped from urging any such irregularity, as defense to suit, by the recitals of said bonds.  Gen. Laws, 1881, p. 5;  Gen. Laws, 1885, p. 41;  Marcy v. Oswego, 92 U. S., 640, 641; Humboldt v. Long, 92 U. S., 644, 645; Davis County v. Huidekoper, 98 U. S., 100;  Wilson v. Salamanca, 99 U. S., 504;  Chambers County v. Clews, 21 Wall., 321;  Burr. Pub. Secur., pp. 310–312, 320–322.

2.  The fact that the bonds recite that they are redeemable after the expiration of ten years at the pleasure of the county would not change or affect the county's right to redeem them at any time, as the law under which they were issued formed a part of the contract, and a purchaser must be held to have contracted knowing that the county had this right, and that said recital was not binding.   Besides, the fact that the bonds were payable by their terms at the pleasure of the county, at any time after ten years from their date, was a mere irregularity that would not vitiate the bond.   Rock Creek Township v. Strong, 96 U. S., 271;  Grand Chute v. Winegar, 15 Wall., 355.

3.  The power to issue court house bonds carries with it the power to issue bonds for all its parts and adjuncts, including repairs to and completion of the court house, and the erection of and completion of jail.   Brown v. Graham, 58 Texas, 254.

4.  The payment of interest on said bonds as it fell due, by the defendant, on April 10, 1885, April 10, 1886, and April 10, 1887, was by section 4, Act 1885, a waiver of all irregularities attending the issuance and sale of said bonds, and was a ratification of the same, even if the said irregularities existed, and there was, in point of fact, a want of

power to issue the same. The said irregularities having been waived and the bonds ratified by the defendant, under the law they are binding obligations, and the defendant can not now question their validity. Gen. Laws 1885, p. 40.

5. The defendant, by its duly authorized officers, having sold the bonds in controversy and received the proceeds of such sale and applied the same to an authorized and lawful public purpose, it is, by section 3 of the Act of 1885, estopped from denying the validity of the same or their binding obligation. Rev. Stats., art. 1514, authorizing Commissioners Courts to erect court houses, jails, and other needful public buildings. Gen. Laws 1881, p. 5, authorizing the issue of bonds to erect court houses. General Laws 1885, p. 41, validating bonds where proceeds have been received.

6. The Legislature has the power to pass laws validating county bonds where their invalidity grows out of a disregard of some limitation or a failure to comply with some requirement imposed by the statutes in force at the time of issuance, and such laws are not retroactive within the constitutional prohibition. Morris & Cummings v. The State, 62 Texas, 741; Blum v. Looney, 69 Texas, 3; New Orleans v. Clark, 95 U. S., 644; Richie v. Franklin, 22 Wall., 74; Burr. on Pub. Secur., pp. 278, 353.

7. If the bonds in question were issued without lawful authority, and were void, yet the defendant having received the proceeds of sale and applied the money thus received to a lawful and authorized purpose—i. e., for the erection of a court house and jail for Nolan County— and thereby had the benefit of said money, the plaintiff can recover of and from the defendant in this case the sum of $12,000, with interest, as money had and received and applied to public uses. Rev. Stats., art. 1514, subdiv. 7; Hitchcock v. Galveston, 96 U. S., 350; 2 Mora. on Corp., pp. 614–719; Gause v. City of Clarksville, 1 McCreary, p. 78.

In reply to appellant's second assignment of error, it is deemed unnecessary to do more than call the court's attention to the fact that judgments against a county can only be enforced by the levy and collection of taxes to pay the same. The law having provided for the levy and collection of a special tax to pay indebtedness of the character sued upon, and appellee having made the officers whose duty it is to levy, assess, and collect taxes, and pay out the funds of appellant, parties defendant, with prayer that they be required to make the necessary levy and collection, it was not error for the court, on rendering judgment for appellee for the amount sued for, to also order the levy and collection of the proper tax.

GAINES, ASSOCIATE JUSTICE. — The act by virtue of which the bonds in controversy purport to have been issued contains the following provisions:

"Section 1. * * * That the County Commissioners Court of any county which has no court house at the county seat is hereby authorized and empowered to issue the bonds of said county, with interest coupons attached, in such amount as may be necessary to erect a suitable building for a court house; said bonds running not exceeding fifteen years, and redeemable at the pleasure of the county, and bearing interest at a rate not exceeding 8 per cent per annum.

"Section 2. The Commissioners Court of the county shall levy an annual ad valorem tax on the property in said county sufficient to pay the interest and create a sinking fund for the redemption of said bonds, not to exceed one-fourth of 1 per cent for any one year.

"Section 3. The county shall not issue a larger number of bonds than a tax of one-fourth of 1 per cent annually will liquidate in ten years, and said bonds shall only be sold at their face or par value.

"Section 4. The interest on said bonds shall be paid annually on the 10th day of April, and they shall be registered and an account kept by the county treasurer of the amount of principal and interest paid on each.

"Section 5. Said bonds shall be signed by the county judge and countersigned by the county clerk, and registered by the county treasurer, before they are delivered." Laws 17th Leg., p. 5.

It is contended on behalf of the appellant that all the bonds are wholly void, because their amount is in excess of that allowed by the Constitution of the State and the act herein before set out, and because they do not conform to the provisions of that statute. It is also insisted on behalf of the county, that the first series of bonds, namely, those issued to Martin, Burns & Johnson for building a jail, are void for the additional reason that the county was not authorized by law to create a bonded indebtedness for that purpose. On the other hand, it is insisted for the appellee, first, that the State is a bona fide holder of the bonds involved in this suit, and that therefore they are not subject to the defenses urged against them; and secondly, that if originally void they have been made valid by the Act of the Legislature passed March 24, 1885. Gen. Laws 1885, p. 40.

We will first discuss the bonds issued to Martin, Burns & Johnson, for upon their validity in a measure depends the soundness of those subsequently issued; for the amount of indebtedness which the county had the power to create at the time the subsequent bonds were issued depended upon the amount of any valid bonded indebtedness then subsisting.

It may be considered settled law in this State that one of its counties can not issue bonds without an act of the Legislature conferring that power. Robertson v. Breedlove, 61 Texas, 316. The case cited is also authority for holding that the act by virtue of which the bonds in question were issued conferred authority to issue bonds upon such

counties only as had no court house at their county seat. ' We think it equally clear that the only purpose for which the power could be exercised was to provide the means for building a court house. The Act of February 2, 1884, which authorizes the issue of bonds for the construction not only of court houses but also of jails, tends to show that such is the legislative construction of the act under consideration. Gen. Laws 1884, p. 28. Therefore, at the threshold of the discussion we are met with the question whether there was any authority whatever for the issue of the first series of bonds. It is not to be supposed that the Legislature intended to confer the power upon the counties to create a bonded indebtedness to build a temporary structure to be used as a court house until a permanent building could be constructed. The limitations in the Constitution upon the creation of municipal debts, and the great caution manifested in conferring power upon municipal corporations to issue bonds, repel the idea that it could have been the purpose to authorize counties to issue them for the purpose of building other than permanent court houses. The building for the construction of which the first series of bonds were issued was primarily intended for a jail, and it was to this use that it was to be permanently devoted. The fact that it was the purpose of the Commissioners Court to use it also as a court house until a court house could be built did not authorize an issue of bonds for its construction. We therefore conclude that the first series of bonds was issued without authority of law. Should we hold otherwise, and determine that the building for the construction of which they were issued was a court house, then it would follow that when the additional bonds were issued the county had a court house, and that the commissioners were without authority to make the additional issue. But we think the jail, although used both as a court house and a jail, can not be deemed a court house within the meaning of the statute, and that therefore the Commissioners Court had the power to create a bonded indebtedness for the purpose of constructing a separate court house for the county.

Although we hold that the Commissioners Court of Nolan County exceeded its authority in issuing bonds to Martin, Burns & Johnson for the construction of a jail, it does not follow that they may not be a valid indebtedness in part at least against the county. They are payable to bearer, and in all other respects they are regular upon their face. They recite, that they were issued for the purpose of erecting a court house for Nolan County, and in pursuance of the authority conferred by the Act of February 11, 1881. They also purport to have been registered by the treasurer of the county. The State is admitted to be a holder for value of the four bonds of this series which are in part the foundation of this suit; and it is also admitted, that at the time of their purchase its agents had no actual notice of any fact which impaired their validity. The county of Nolan had no court house, and

therefore the Commissioners Court had power to issue bonds for the erection of such a structure, containing all the recitals necessary to show the authority for the creation of the debt.

If a purchaser were bound to inquire into the existence of the facts which empowered the court to issue bonds to build a court house, and to know that the county had no court house, in view of the recitals upon the face of the obligations he was bound to look no further.   He had the right to rely upon the truth of such recitals, and having paid value for the bonds without actual knowledge of their illegality, the county would be estopped to set up that they were not issued for the purpose for which they purported to be issued.   Chambers County v. Clews, 21 Wall., 321; Wilson v. Salamanca, 99 U. S., 504; Marcy v. Oswego, 92 U. S., 640; Humboldt v. Long, 92 U. S., 644; Davis County v. Huidekoper, 98 U. S., 100.   We conclude, therefore, that the four bonds issued to Martin, Burns & Johnson, now held by the State, are valid obligations against the county, unless that entire issue was in excess of the amount of indebtedness which the court was authorized by law to create.

The question of excess in the amount of the indebtedness depends upon the construction of the statute.   It must be interpreted in the light of the constitutional provisions which relate to the same subject matter.   In The Citizens Bank v. The City of Terrell, 78 Texas, 450, section 8 of article 9 of the Constitution as amended in 1883 was construed, and it was held that the amount of indebtedness which counties, towns, and cities were authorized to create for the erection of public buildings, etc., was limited to 25 cents upon $100 worth of property as shown by the assessment rolls of the municipality.   The word "valuation" as used in the section was held to mean the value as fixed by competent authority for the purposes of taxation.   The result of that decision is, that the governing bodies of municipal corporations are not empowered, when ascertaining the amount of an indebtedness to be created, to determine for themselves the aggregate value of the property therein subject to taxation, but are to be governed by the official rolls made out by the tax assessor.   The original section 8 of article 14 of the Constitution was in force when the bonds in controversy were issued, but it is subject to the same construction.   If, instead of being limited to the amount of taxable property as shown by the assessor's rolls, the Constitution had conferred upon the Commissioners Courts the power of determining that question for themselves, then, according to the rule laid down in Marcy v. Oswego, supra, and recognized in the case of The Citizens Bank v. Terrell, supra, their determination of the amount would have been conclusive, and would have precluded inquiry into the power to issue the bonds in so far as the question of amount is concerned.   But the power being limited as to the amount by the offi-

cial assessment, the commissioners were not authorized to look beyond it and to determine the extent of their power from other data within their reach. In such a case the rule established in Dixon County v. Field, 111 United States, 94, and acted upon in The Citizens Bank v. Terrell, applies.

If our Constitution were silent upon this subject, then it might reasonably be held that section 3 of the statute quoted above authorized the Commissioners Courts to determine the question as to the amount of bonds "a tax of one-fourth of 1 per cent annually will liquidate in ten years." But there being a provision in the Constitution bearing directly upon that subject, we are of the opinion that this section must be construed in connection with it. The limit in the Constitution being an amount upon which a tax of one-half of 1 per cent would pay annually the interest and 2 per cent as a sinking fund, and the statutory requirements being such an amount only as one-fourth of 1 per cent would liquidate in a period of ten years, it was not absolutely necessary that the commissioners should be governed by the same rule in determining the two limits. An amount of indebtedness that would be liquidated within ten years, though based upon a valuation in excess of that shown by the assessment rolls, might still be within the constitutional limit, which permits the creation of such a debt as will be ultimately paid by an annual tax of one-half of 1 per cent upon the taxable values of the county as shown by the official assessment. But we think it more reasonable to presume that the Legislature intended that the same rule should govern in determining both limits, and that the Commissioners Courts should not look beyond the assessment rolls in ascertaining the amount of the indebtedness which the statute authorizes them to create.

The bonds issued to Martin, Burns & Johnson were delivered to them in April, 1882, and the last official assessment (that for 1881) showed the amount of the taxable values of the county to be $361,770. According to the rule laid down in Russell v. Cage, 66 Texas, 428, a tax of one-fourth of 1 per cent upon this sum would pay in ten years $6280.75, and no more. To that amount the bonds now under consideration were valid. As to the excess over that sum, they were void; and having all been issued at the same time, under the rule laid down in the case of The Citizens Bank v. Terrell, supra, each will bear a relative proportion of the loss. It was also held in the case last cited, that the purchasers of the bonds of a city must look to the official assessment in order to ascertain the extent of the council's authority to create a municipal indebtedness, and that as to an excessive issue they can not claim to be innocent purchasers. The same rule applies in this case.

It will be noted that in determining the amount of indebtedness which the Commissioners Court of Nolan County had the power to

create in April, 1882, we have not taken into the computation the assessed values of Fisher County, which was attached to it for judicial purposes. We do not doubt that for most purposes of government a county which is attached to another for judicial purposes is to be treated as a part of the county to which it is annexed. The people of the two counties connected should alike enjoy the benefits and bear the ordinary burdens of the county administration. But where the boundary of a new county is defined and it is attached to another for the purpose of county government, it is evident that the arrangement is provisional, and that it is expected that the population of the new county will soon be able to organize as an independent municipality and administer their own county affairs. Therefore it is unreasonable to presume that it was contemplated that in determining the amount of indebtedness which a county could lawfully create for erecting a public building the value of the property in a new county attached to it for temporary purposes should be taken into the calculation. When the new county is organized, the property within its limits is no longer subject to be taxed by the parent county. Such property must then bear the burden of taxation for the purpose of construction of public buildings for the use of the county in which it is situate.

It follows, from what has been said, that when the bonds were issued for building the court house proper there was an existing indebtedness outstanding against Nolan County, which it was the duty of the Commissioners Court to consider in estimating the amount of additional indebtedness which they had the power to create. What the amount of the valid indebtedness then existing was, we have had some difficulty in determining. As to the four bonds of the first issue, there is no question. They passed into the hands of the State as an innocent purchaser. The others, so far as the evidence shows, remained in the hands of Martin, Burns & Johnson, who knew the facts, and can not be considered bona fide holders. But these latter bonds are negotiable, and until maturity, unless the transfer be enjoined, they were capable of becoming in part valid obligations of the county by assignment to an innocent purchaser; and we think that as to this matter the presumption should be indulged that the first holders have availed themselves of the advantage of their situation and have negotiated the bonds. We are of the opinion, therefore, that when the second series of bonds was issued the county should be considered as having an existing bonded indebtedness of $6280.75.

The first set of bonds intended to be issued for the purpose of building the court house proper were executed and put into the hands of the county's agent for sale before the delivery of those which were issued in payment for the construction of the jail. These were, however, returned, and new bonds executed in lieu thereof, under an order of

*o*

the Commissioners Court made April 22, 1882. The latter—twenty in number, and numbered consecutively from 1 to 20, inclusive—were placed in the hands of an agent, and were by him sold to Matthews & Whitaker, of St. Louis. It does not appear when this sale was effected. However, at the date of the order which provided for their issue the assessment rolls of 1882 could not have been made out and finally passed upon by the board of equalization. We are of opinion that until the new rolls were examined, corrected, and approved by the latter board the official assessment for 1882 was not definitely ascertained, and that in determining the amount of indebtedness which it was authorized to create for the county, the Commissioners Court was required to be governed by the official assessment for 1881. But we have seen that the court had already incurred in behalf of the county all the indebtedness which the statute authorized them to create, until a new assessment should show an increase of taxable values. If it appeared that the twenty bonds now under consideration had not been sold until after the assessment rolls for 1882 had been made complete by the action of the equalizing board, then it might be held that that assessment should be taken as the basis of calculation in determining the question of excess. But the final order which authorized the bonds to be issued, the registration, and the bonds themselves, are all dated long prior to the time at which under the statute the board of equalization could have acted upon the assessment of the year 1882; and therefore we think that in absence of some direct testimony upon the subject it is not to be presumed that they were not sold until after that time. We are therefore of the opinion that at the time the indebtedness evidenced by the bonds now in question was attempted to be created the Commissioners Court of Nolan County had no power to issue any bonds in addition to those outstanding, and that they are therefore invalid, even in the hands of a purchaser without actual notice of the defect.

The entire series of bonds which were issued for the construction of the court house proper were numbered from 1 to 30, inclusive. What we have just said applies to bonds numbered from 1 to 20, inclusive, of which the State holds five. The Commissioners Court, by a special order passed November 20, 1882, directed that bonds numbered respectively 21, 22, and 23 should be delivered to Archer (the contractor) in part payment for building the court house, and they were so delivered. This was after the assessment rolls for 1882 should have become a finality. The twenty bonds previously issued for building the court house being in our opinion invalid, the only bonded indebtedness at that time outstanding was that created by the bonds issued to Martin, Burns & Johnson for $8755, which were good for the sum of $6280.75. Under the assessment for 1882, which showed taxable property to the amount of $908,276, the Commissioners Court under the rule before

announced was authorized to increase the debt for building a court house to the sum of $15,768.68. These bonds would therefore be good unless invalid upon some other ground. Bonds numbered respectively 24, 25, and 26, were by an order of the court passed placed in the hands of an agent for sale, and were sold in 1884. For the same reason, we are of the opinion they should be deemed valid obligations of the county. The last bonds of this series, which are numbered respectively 28, 29, and 30, and are now held by the State, were ordered to be issued November 8, 1883, and, so far as appears by the agreed statement of facts in this case, did not increase the valid bonded debt of the county beyond the amount which the court had power to create. That amount was properly controlled by the assessment for 1883. The amount of this assessment is not shown, but we would not presume that it was less than that of 1882. After the latter assessment was finally determined, the court had the power to increase the indebtedness for the construction of the court house to the sum of .$15,768.68, in 8 per cent bonds, as has been previously shown. There was then subsisting of valid indebtedness $6280.75, on the bonds delivered to Martin, Burns & Johnson, at the time the nine bonds last named were issued. They increased the debt to the sum of $15,280.75, an amount which the court then had the power to create. There is one other bond, but the date of its issue does not appear; and we are of opinion that if it had been issued at such time as to make it valid, and the county desired to take advantage of the fact, the burden was upon it to show it.

From what has been said it appears that, in our opinion, of the bonds which are made the foundation of this suit, those numbered 28, 29, and 30 were valid when issued; those numbered 10, 11, 12, 13, and 14 were invalid; and that those numbered 1, 2, 3, and 4, issued to Martin, Burns & Johnson, were originally only good in part. It remains to consider whether the bonds which were originally invalid in whole or in part have been made valid by the Act of March 24, 1885. Sections 3 and 4 of that act are as follows:

"Section 3. In all cases where the proceeds of the sale of any bonds have been received by the proper officers of the county, or by a party acting for it in negotiating the sale thereof, such county shall be thereafter estopped from denying the validity of such bonds so issued, and the same shall be held to be valid and binding obligations of the county, and in any action upon such bonds or coupons thereto, judgment shall be rendered against the county for the amount of the bonds sued on and interest thereon at the rate mentioned therein, deducting such amounts, if any, as have been previously paid thereon.

"Section 4. The payment of any interest upon any bonds heretofore purchased, or that may hereafter be purchased, with public school funds, or belonging thereto, shall be deemed and held a waiver of any

supposed error, irregularity, or want of authority affecting or tending to affect the validity of any such bonds; and the same shall thereafter be held valid and binding obligations upon the county by which they appear or purport to have been issued, notwithstanding any such supposed error, irregularity, or want of authority as aforesaid." Gen. Laws 1885, p. 41.

It is insisted on behalf of appellant that these provisions are contrary to the Constitution of the State, because they are retroactive and an attempted usurpation of judicial power. It is also claimed that they apply only to such bonds as may have been purchased by the State directly from the counties.

That the provisions in question are not repugnant to the Constitution in the particulars urged against them we think too well settled to require discussion. Richie v. Franklin County, 22 Wall., 74; New Orleans v. Clark, 95 U. S., 644; Cool. Const. Lim., 4 ed., 466, 467. It can hardly be deemed an open question in this court. Morris v. The State, 62 Texas, 741; Blum v. Looney, 69 Texas, 3. Where a contract which a municipal corporation has attempted to create is invalid merely for want of legislative authority to create it, it can be made valid by a subsequent law. But if at the time of its attempted creation the Legislature could not have authorized it, it may be doubted whether the Legislature could make it valid, although in the meantime by a change in the Constitution the restriction upon its own power may have been removed.

At the time the first set of bonds for building the court house proper were issued, the restrictions of the Constitution upon the county in the creation of a debt for such a purpose grew out of the operation of two provisions of that instrument. Section 9 of article 8, as it then existed, limited the annual tax which a county was authorized to levy for the erection of public buildings to 50 cents on the $100 worth of property; and section 7 of article 11 provided, that no county should create any debt without making provision at the same time "for levying and collecting a sufficient tax to pay the interest thereon and provide at least 2 per cent as a sinking fund." A tax of 50 cents on the $100 worth of property would, at the time the first and second sets of bonds were issued, according to the last official assessment of the county, have yielded the sum of $1808.85. This would have paid 8 per cent interest and 2 per cent sinking fund upon an indebtedness of $18,088.50. The Legislature therefore had the power at that time to have authorized the county to issue the full amount of the jail bonds ($8875), and the amount of the five bonds of the first set of court house bonds which the State now holds. The Legislature also clearly had the power to have authorized the issue of bonds to build a jail at the time the bonds were issued for that purpose. We conclude, therefore, that bonds numbered respectively

1, 2, 3, and 4 of the series issued for building the jail, and those numbered respectively 10, 11, 12, 13, and 14 of the court house bonds—all of which are now held by the State—were made valid to their full amount by the Act of 1885, provided the act applies to bonds which were not sold directly to the State.

There is nothing in the language of the validating act which indicates that it was not to be applied to bonds which may have been bought by the State after they had been transferred by the county to third parties. The object of the provision was to protect the school fund, and we see no reason why it was not intended to validate any county bonds held by the State for the benefit of its public schools, whether purchased directly from the county or from intermediate holders.

It is also contended that the bonds issued for the construction of the court house were invalid because by their terms they were not redeemable until after the lapse of ten years. In this particular they do not comply with the law by virtue of which they were issued. The act requires that the bonds shall be redeemable at the pleasure of the county. In Rock Creek v. Strong, 96 United States, 271, it was held that a similar irregularity did not render the bonds void. However this may be, the effect was certainly cured by the validating act.

We conclude that such of the bonds upon which this suit was brought as were originally invalid in whole or in part have been made good by the Act of May 24, 1885, and that the court below did not err in so holding.

There was no error in rendering judgment against the officers of the county commanding them to levy and collect a tax to pay the amount of the recovery. They had refused to perform that duty, had repudiated the debt, and were made parties to the suit. No execution for the money could issue against the county. Rev. Stats., art. 679.

We find no error in the judgment, and it is affirmed.

*Affirmed.*

. Delivered December 18, 1891.

Justice HENRY not sitting.

[NOTE.—This case did not reach the Reporter until after the Tyler cases were in print.]