JEFF BLAND LUMBER & BUILDING CO. v. GALVESTON, H. & S. A. R. CO. (No. 479.)

(Court of Civil Appeals of Texas. Beaumont. April 28, 1919. On Rehearing, May 7, 1919.)

1. MANDAMUS ⊕⇒151(2) — COMPELLING RESTORATION OF RAILROAD TRACK—NECESSARY PARTIES.

Where a railroad, with permission of the authorities, the Railroad Commission and the Attorney General, abandoned a portion of its track, and sold its right of way to a company, which sold to residents of the city, who built thereon, a company aggrieved by the abandonment cannot secure mandamus to compel replacement without making the city and present holders of the title to the abandoned right of way parties to the suit.

2. RAILROADS ⊕⇒57 — ABANDONMENT OF RIGHT OF WAY—RATIFICATION BY LEGISLATURE.

The Legislature, by Acts 35th Leg. (4th Called Sess.) c. 27, § 4, could ratify effectually an abandonment and relocation by a railroad of a portion of its main line tracks.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Suit for mandamus by the Jeff Bland Lumber & Building Company against the Galveston, Harrisburg & San Antonio Railroad Company. From judgment denying the writ, plaintiff appeals. Affirmed.

Hardway & Cathey, of Houston, for appellant.

B. B. P. & G. Means and McMeans, Garrison & Pollard, all of Houston, for appellee.

WALKER, J. In this suit appellant sought a mandamus commanding the defendant to rebuild a portion of its railroad track which it had torn up and the right of way of which had been sold. This prayer was denied by the trial court, and from this judgment appellant has appealed.

In its second amended original petition, filed on the 12th day of July, 1917, the plaintiff (appellant) alleged that it and the defendant were corporations duly incorporated under the laws of Texas, and that it is the owner of certain property situated in the McGregor-Blodgett addition to the city of Houston, and was such owner prior to the 16th day of July, 1915; that prior to the 16th of July, 1915, the main line track of defendant railway company adjoined this plaintiff's property, and passed by and in close proximity to plaintiff's lumber yard; that plaintiff used this property for the purpose of conducting a lumber yard and bought most of its lumber from Eastern Texas and Western Louisiana, and that the defendant had branch lines or connecting lines serving this pine belt; that the San Antonio & Aransas Pass main line track also adjoins plaintiff's property, but that no branch of this system extends into the pine belt; that plaintiff continuously shipped a large number of cars over the main line of defendant, and that it would suffer great loss if deprived of this service; that defendant maintained a depot in close proximity to plaintiff's property at Blodgett, and had maintained the same for many years prior to July, 1915; that, relying on the permanency of the location of defendant's main line and the improvements placed thereon by it at Blodgett, plaintiff had expended about $25,000 in buying property and improving the lot adjacent to the depot and defendant's main line track; that on or about the 16th day of July, 1915, the defendant tore up and abandoned a portion of its main line track from Blodgett to Chaney Junction; that plaintiff objected and protested against the defendant tearing up and abandoning its track; that defendant is now supplying plaintiff's competitors the same service formerly received by it, greatly to plaintiff's damage; that, if defendant is permitted to tear up its track and is not required to rebuild the same, it will suffer irreparable injury, and it will leave plaintiff without railroad connection, and without railroad service to its industries by the defendant, and with no railroad connection except the S. A. & A. P., which does not serve the timber belt, and that the S. A. & A. P. is trying to abandon its track adjoining plaintiff's property; that many years before the institution of this suit the defendant and B. F. McGregor, who at that time owned the lands around Blodgett, entered into a contract, by the terms of which defendant was to build the depot at Blodgett and the other improvements; and that this contract was made for the benefit of those who bought property in the Blodgett addition, and by virtue of its purchase of Block No. 2 of the Blodgett addition that it had vested rights in said contract, and in the maintenance and operation of said main line track and switch connections and service over said switches and industrial track, and in the maintenance of a depot, plaintiff's prayer being as follows:

"Wherefore, premises considered, this plaintiff prays that this honorable court issue its mandamus commanding and compelling the defendant railroad company herein to rebuild, maintain, and operate that portion of its main line heretofore abandoned and to connect with

---

⊕⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

said terminal tracks, side tracks, and industrial spur track and to furnish this plaintiff service required of it heretofore, and to maintain a passenger depot as per its said contract, and that upon final hearing hereof a perpetual injunction be issued restraining the defendant from hereafter abandoning such portion of its main line or passenger depot and from severing its connections with said side tracks, spur tracks, and public unloading tracks, and from refusing to give to plaintiff such general service as herein prayed for. Plaintiff further prays for costs and for all general and special relief, in law and in equity, to which it is entitled by virtue of the premises."

To this the defendant answered by general demurrer and special exception and general denial, and further by special pleas, as follows: That since November 16, 1914, its freight trains were not operated over that portion of its line as it existed prior to July 16, 1915, in the vicinity of plaintiff's premises; that before abandoning its depot at Blodgett and before removing its track, it was advised by the Railroad Commission of Texas, on authority of the Attorney General, that there was no legal objection to the railroad company relocating a portion of its line; that after receiving this advice the depot was abandoned and the track removed; that afterwards, under authority of section 4, c. 27, of the Acts of the Fourth Called Session of the Thirty-Fifth Legislature, the Railroad Commission entered an order ratifying and confirming the actions of the defendant in abandoning its track and depot; that, after abandoning the track, it sold its right of way to the Houston Land Corporation, and it had resold the same to citizens of Montrose, who had built on it very valuable, costly, and beautiful residences; that the streets in Montrose addition were replatted after this sale, and the city of Houston recognized the change in the streets; that, after removal of the track, the city council had passed an ordinance forbidding and prohibiting the laying of railroad tracks in that section of the city.

The record does not show when plaintiff's original petition was filed, but, so far as we can determine, it must have been filed in July or August, 1915. The original suit by plaintiff was for an injunction restraining the defendant from abandoning this depot and removing its tracks. This injunction was denied on August 13, 1915. No further action seems to have been taken by appellant in the prosecution of its suit until the filing of its second amended original petition on the 12th of July, 1917, followed by a trial of this case on March 5, 1918. The sale of the right of way by defendant and the passage of the ordinance by the city of Houston and the replatting of the Montrose addition all occurred before the filing of the petition asking for mandamus. This case was submitted to the court on an agreed statement of facts, and there is nothing in the record showing that the present holders of the right of way had any notice, actual or constructive, of the pendency of this suit at the time they bought this property.

The following brief statement of the facts is taken from appellee's brief:

Years ago the Galveston, Harrisburg & San Antonio Railroad was built from Harrisburg, in Harris county, in a westerly direction, to San Antonio, and later was extended to El Paso. As first constructed, it did not enter the city of Houston, but afterwards, more than 30 years ago, it was extended into Houston by a line which left the main line a few miles west of Harrisburg, at a station called Stella, thence running in a northeasterly direction to the Houston & Texas Central Railroad, with which it formed a junction at a station called Chaney Junction. By this construction trains on the main line would reach the Grand Central Depot, by leaving the main line at Stella, thence over the cut-off to Chaney Junction, and thence over the tracks of the Houston & Texas Central to the Grand Central Depot. At the time of the construction of this short track, which may be called Stella-Chaney cut-off, the land through and over which it was built was out in the country, and sparsely settled. Whether it was then in the city limits of Houston the record does not show. In the course of time a greater portion of the land traversed by the cut-off became, if it was not before, a part of the city of Houston. Additions to the city were laid in lots, blocks, and streets, houses were built, and the streets laid out and graded across the railroad's right of way and track, the track being elevated through Montrose addition to the height of about four or five feet above the level of the surrounding country, and in the course of time lands that were waste or only agricultural lands became densely populated portions of the city of Houston. One of these additions was Montrose, which grew and flourished, as the proverbial green bay tree, another was Blodgett, another was McGregor's, and another was the James Bute addition, through all of which the cut-off ran. Then additions west of the railroad were laid out, among which were Rossmoyne, Hyde Park, and Fitze; and the tide of population flowed steadily in the direction of those additions until a large proportion of the city's population lived therein. In the meantime, as railroad traffic became heavier, and longer and more numerous trains over the cut-off and through said additions became a serious menace to the lives and comfort of the people who lived therein, or who had to cross the track, as well as those traveling as passengers upon the railroad, and those engaged in operating it, the high roadbed seriously interfered with proper drainage, and the expeditious and efficient handling of trains was retarded and hampered by reason of city ordinances, which prescribed a speed

limit of trains to six miles per hour. It was these conditions, which had become next to intolerable, that confronted the people and the railroad company prior to July 16, 1915. Relief was demanded by the people, and the necessity for it was recognized by the railroad company. Prior to said date the railroad company had constructed another cutoff from its main line to the Grand Central Depot, beginning at West Junction, some two miles west of Stella, thence running in the general direction of northeast to the station of Eureka, some two miles west of Chaney, where it formed a junction with the Houston & Texas Central Railroad, and it reached the Grand Central Depot with its trains by leaving its main line at West; thence over the cut-off to Eureka; thence over the Houston & Texas Central tracks to the depot. Afterwards the defendant purchased a portion of the Houston & Texas Central Railroad's right of way from Eureka to the Grand Central Depot, constructed its own railroad thereon, and now operates its trains on its own tracks from West Junction to said depot. The greater part of the track from West to Eureka was entirely outside the city limits, and crossed no city streets, and was not subject to the city speed limits, and while the distance was greater, trains, because unhampered by speed restrictions and street crossings, made better time than on the former cut-off, without the hazards and dangers of operation.

In November, 1914, the defendant, by permission of the Railroad Commission of Texas, ceased to operate freight trains over the Stella-Chaney cut-off through Blodgett and Montrose additions, and abandoned and removed its depot building at Blodgett, in the Blodgett addition. The abandonment of this depot was subsequent to an order of the Railroad Commission of Texas dated February 26, 1912, amending its mileage table, whereby the station of Blodgett was eliminated from its mileage table.

On or about July 16, 1915, the defendant ceased to operate passenger trains on the Stella-Chaney cut-off, and thereafter all traffic was carried on over the West-Eureka cut-off. Thereafter that portion of the track on the Stella-Chaney cut-off from the intersection with the San Antonio & Aransas Pass Railway, near Main street, through Montrose addition, a distance of approximately two miles, was taken up, and that portion of its roadbed and right of way was abandoned by the defendant; the portion so abandoned being within the city limits of the city of Houston, and including the former station of Blodgett.

On July 16, 1915, after the defendant had begun to move the track from the Stella-Chaney cut-off, the J. B. Farthing Lumber Company applied to the courts for an injunction to prevent the defendant from further removing the track, whereupon the defendant

agreed to discontinue, and it did discontinue, removing any further part thereof until the suit for injunction could be heard on its merits, but said suit was dismissed on July 23, 1915, whereupon plaintiff filed this suit, praying for a temporary injunction against the further removal of the said track and for mandamus to compel the rebuilding of that part already removed, whereupon defendant again discontinued the removal of said track until the temporary injunction, after a hearing, was refused, on August 3, 1915, when the defendant removed the balance of its track through Montrose addition.

On or about the 31st day of October, 1916, the Railroad Commission of Texas, upon the written application of the defendant, authorized defendant to take up and abandon that portion of its railroad track beginning at a point near Blodgett, and extending through Montrose addition, and to relocate its line by way of the West-Eureka cut-off. Prior to that time, the defendant had torn up and abandoned said line through Montrose addition upon being advised by the Railroad Commission that there was no legal objection to its doing so, and it was in accordance with said instructions that the defendant, prior to the issuance of the written authority heretofore referred to, had abandoned said line. The Railroad Commission, in so advising the defendant that it had the right to abandon its station at Blodgett and to remove its tracks through Montrose addition, acted upon the advice of the Attorney General to the effect that there was no legal objection thereto.

After the abandonment of the road from Blodgett north through Montrose addition, the defendant sold and conveyed to the Houston Land Corporation, the owner of the Montrose addition, all of its roadbed and right of way through said addition. Upon acquiring the title thereto, the Houston Land Corporation replatted said addition, closed certain of the streets then existing therein, and opened additional streets through and over the right of way of the abandoned roadbed, and thereafter petitioned the city commission of the city of Houston for permission to close certain other streets in said addition, and to open up additional ones, across the said abandoned roadbed and right of way, which the city granted, and thereafter, after said additional streets had been opened and graded, formally dedicated the same to the city, and the same constituted and now constitute public streets in said city.

Since the abandonment of said roadbed and right of way and the removal of said track by defendant, and the dedication of said streets to public use, and the acceptance thereof by the city, and after incorporating said right of way and roadbed into lots, blocks, and streets, the Houston Land Corporation sold to various and sundry parties— some 12 or 15, or more, in number—portions of said right of way and roadbed, and some

12 or more citizens have constructed beautiful and costly houses upon said right of way and roadbed, and same are now being occupied as residences.

Appellant assigns the following propositions:

(1) A railroad company, after having constructed and operated a main line track, cannot legally abandon or remove any part of said track.

(2) A railroad company, after having once designated its route and depot grounds, and after having constructed its track along said route and operated its trains thereover, cannot legally change said route.

(3) The defendant, having abandoned and removed its track without authority in law, should, upon application of appellant for mandamus to compel the restoration of said abandoned and removed track, be compelled to restore the same.

As, on the facts in this record, we must affirm this case on appellee's independent propositions, we will not discuss appellant's assignments.

[1] The first independent proposition of appellee is as follows:

"The court properly refused to grant the peremptory writ of mandamus sought by appellant to compel the defendant to rebuild and operate its railroads from Blodgett northeastwardly through Montrose addition after the track had been removed and the road abandoned, for the reason that it is shown by the pleadings of the defendant and the undisputed proof that necessary parties whose interest would have been affected by a judgment compelling the restoration and operation of the railroad were not parties to the suit."

No contention is made by appellant that the present holders of this right of way bought the same with notice of the pendency of this suit. Its position is that the railroad company had no authority in law to sell this right of way; that the holders of this right of way, by their chain of title, were advised of the history of the property, and in law they are no more than naked trespassers, so far as the rights of the public are concerned, and for that reason they are neither necessary nor proper parties to this suit, and that, without regard to their rights and interest, a mandamus should issue compelling the railroad company to restore its track. This proposition has been before our courts many times. See City of Austin v. Cahill, 99 Tex. 189, 88 S. W. 542, 89 S. W. 552; Chappell v. Rogan, 94 Tex. 492, 62 S. W. 539; Jefferson v. McFaddin, 178 S. W. 717; Fain v. McCain, 199 S. W. 890; Siddall v. Hudson, 201 S. W. 1030.

In the last case above cited Judge Graves said:

"It has been a number of times held by our Supreme Court that upon an application for mandamus all known parties at interest should be summoned to come in and defend their in-

212 S.W.—48

terests, and that third persons claiming an adverse interest, or that a conflict exists, in the subject-matter must be joined as respondents without regard to the validity of their claims"— citing a large number of cases, all of which fully sustain the rule announced by him.

Without the city of Houston and the present holders of the title to the old right of way being parties to this suit, this defendant was not in position to obey a mandatory order from the district court. All the necessary parties not being before the court, a mandamus was properly refused.

[2] If it be conceded that the abandonment of the depot at Blodgett, the removal of the track, and the sale of the right of way were unauthorized and illegal at the time these things were done, yet the Legislature subsequently validated these acts of the defendant by section 4, c. 27, Acts of the Fourth Called Session of the Thirty-Fifth Legislature, which is as follows:

"All changes, relocations and abandonments of parts of their lines by railroad corporations or receivers of any railroad in or adjacent to any city having a population according to the United States census of 50,000 inhabitants or over, heretofore made with the permission of the Railroad Commission of Texas or authorized by its written order, are hereby validated and made legal as fully as if made under the provisions of this act, and such permission or written order of the Railroad Commission of this state, given prior hereto, shall be full power and authority to a railroad corporation or receivers of any railroad to make such change, relocation or abandonment of parts of its line; providing that this act shall not affect any right or rights for damages that any person, firm or corporation may now have, may have had or may have in the future for damages caused by any such removal, change or abandonment."

After the passage of this act, the Railroad Commission entered the following order:

"(1) That said company has acted in good faith and under the authority of the Railroad Commission of Texas, and the statutes as it understood them, in the abandonment of the station of Blodgett and in the relocation of its tracks within the city of Houston, as shown by said petition.

"(2) That it was and is and will be to the public interest that said station be permanently abandoned and the said tracks be permanently relocated as directed in said application.

"It is therefore considered, ordered, adjudged, and decreed that the Galveston, Harrisburg & San Antonio Railway Company be and it is hereby granted authority permanently to abandon said station, and to relocate its said tracks within said city as directed in said application, and that its prior acts in the abandonment of said station and relocation of said tracks be and the same are hereby ratified and approved by the Railroad Commission of Texas."

There is no constitutional objection to an act of the Legislature authorizing a railroad

company to change the location of its main line tracks on the facts in this record, and what the Legislature could lawfully have authorized before the tracks were removed it could ratify afterwards, as was done in this case. Thompson v. County of Lee, 3 Wall. 327, 18 L. Ed. 177; Morris v. State, 62 Tex. 729, 739; Nolan County v. State, 83 Tex. 199, 17 S. W. 823; Haynes v. State, 44 Tex. Civ. App. 492, 99 S. W. 405; Cooley's Const. Lim. (7th Ed.) 541.

Finding no error in this record, this case is affirmed.

### On Rehearing.

We find that we were in error in our original opinion in saying that the order of the Railroad Commission was entered after the validating act was passed. This order was entered on the 31st day of October, 1916. In all other respects the motion for rehearing is overruled.