No. 5839.

WM. COX *v.* HOUSTON & TEXAS CENTRAL RAILWAY COMPANY.

1. STATUTE CONSTRUED—SURVEY.—Whatever may be the proper meaning of the words "other purposes," as they appear in the first and second sections of the act of 1866, entitled "an act attaching certain counties therein named to the counties of Jack and Montague for judicial and other purposes," it must be held under the broadest construction possible that even if the words above referred to included the making of surveys, the surveyor of Montague was the officer who was authorized to survey lands in Hardeman county.

2. STATUTE CONSTRUED.—No construction can be given to the act of 1866, entitled "an act attaching certain counties therein named to the counties of Jack and Montague for judicial and other purposes," which would attach Hardeman county to Jack county for surveying purposes.

3. SAME.—The act of 1858 requires that the surveyor of a county, not previously a separate land district, shall not receive and file any certificate until he has procured a copy of all files, applications and locations therein from the surveyor's office of the land district to which such county belongs, and file the same for inspection of parties interested, *held:*

    (1) The provision was designed for an organized county newly formed into a land district, and not for an organized county transferred from one land district to another.

    (2) The presumption would obtain that the surveyor had performed the duties imposed on him by the act, and the burden of proving that he had not would devolve on whoever might assert the contrary, or claim a right as the result of his neglect.

4. DE FACTO OFFICER.—To constitute a de facto officer, he must have such colorable right to the office the duties of which he undertakes to discharge as might induce the public to suppose without inquiry that he is de jure the officer.

5. SAME—SURVEYS.—The surveyor of one county, who, as such, assumes in violation of statute to make surveys in another county in which another officer is alone empowered to make surveys, can not be de facto the surveyor of such other county, even though his acts as such be generally acquiesced in and sanctioned by the commissioner of the general land office.

    LEGISLATIVE RATIFICATION OF SURVEYS—SAME.—No rights can be acquired under a legislative ratification of an illegal survey as against an intervening survey legally made before the passage of the act of ratification.

APPEAL from Travis. Tried below before the Hon. A. S. Walker.

*A. M. Carter* and *A. M. Jackson,* for appellant, cited Fishkill v. Fishkill, 22 Barbour, New York, 642; Ryerson v. Utley, 16 Michigan, 277; St. Louis v. Tiefel, 42 Missouri, 592; State ex rel. Hilton v. Lafayette County, 41 Missouri, 39; Cooley on Constitutional Limitations, 141.

On their proposition that to construe "other purposes" as covering surveying purposes, would be to add to the operative portion of the statute a purpose not expressed by the Legislature, and to thereby render the statute unconstitutional, as embracing several distinct subjects of legislation in one and the same act, they cited section 24, article 7, Constitution of 1866; section 17, article 12, Constitution of 1869; section 35, article 3, Constitution of 1876; Giddings v. City of San Antonio, 47 Texas, 548; Peck v. City of San Antonio, 51 Texas, 490; Breen v. Texas Pacific Railway Company, 44 Texas, 302; State v. Shadle, 41 Texas, 404; Cannon v. Hemphill, 7 Texas, 207, 208; State v. Powers, 14 Indiana, 195; Ingoe v. State, 14 Indiana, 239; Mewherter v. Price, 11 Indiana, 201.

That a survey made by a county or district surveyor out of his district is void, they cited Linn v. Scott, 3 Texas, 67; Peacock v. Hammond, 6 Texas, 548, 549, et seq.; Clark v. Goss, 12 Texas, 397; Tabor v. Commissioner, 29 Texas, 520.

*H. D. Prendergast* and *D. H. Hewlett,* for appellee.

WILLIE, CHIEF JUSTICE. This is a controversy as to the title to six hundred and forty acres of land in Hardeman county. The appellant claims it under a location and survey made by the surveyor of Jack land district, November 10, 1874. The appellee claims it under a location made by the same surveyor, September 28, 1872. There is no question as to the right of this surveyor to make surveys in Hardeman county at the time the appellant's certificate was located; the important question is as to his authority to do so when the survey was made for the appellee. The court below held that he did possess that authority, and gave judgment for the appellee, and this judgment is before us for review on appeal.

The appellee claims, also, that the above officer was, on the twenty-eighth of September, 1872, the de facto surveyor of Hardeman county, as he had possession of its land records, and was in the habit of making surveys in that county, and these surveys were generally recognized as legal by the Commissioner

of the general land office, and that the Legislature afterwards directed patents to issue on them, saving the intervening rights of third parties. The land in controversy was never patented upon either survey. If the surveyor of Jack land district had no authority to survey land in Hardeman county on September 28, 1872, then the appellee's survey was void, and the land open to location and survey when the appellant's certificate was laid upon it.

The act of 1866, under which the court below held that Benson, the surveyor of Jack county, was the lawful surveyor of Young county land district, at the time the survey was made for the defendant, and was authorized to make that survey, is entitled "an act attaching certain counties therein named to the counties of Jack and Montague for judicial and other purposes."

The first section provides that the counties of Young, Throckmorton, Haskell, Knox, Baylor and Archer shall be attached to the county of Jack for judicial and other purposes.

The second provides that the counties of Clay, Wichita, Wilbarger, Hardeman and Greer shall be attached to the county of Montague for judicial and other purposes.

It is claimed by the appellee that the *other purposes* mentioned in the statute include the survey of the land lying in such attached counties, by the surveyor of the county to which they are attached. We do not think it necessary for a proper disposition of the present case that this proposition should be either discussed or controverted. Admitting that the expression "other purposes" includes the purpose of making surveys, what officer, under this act, was entitled to survey the land in controversy? The land is admitted to lie in the county of Hardeman. The act attaches the county of Hardeman to Montague, and not to Jack county, for judicial and other purposes. It must follow, therefore, upon the appellee's own construction that the surveyor of Montague was the officer who, under this act, was authorized to survey lands in the county of Hardeman.

But it is said that Hardeman county was part of Young land district, and as such was with the balance of that district attached by this act to the county of Jack. In support of this proposition we are referred to articles 3822 and 3854 of our Revised Statutes, which were not in force at the time the rights of the respective parties accrued; but they are in some respects re-enactments of the Statutes of 1860 and 1858 upon the same subject. The first named of these Statutes provides that "any or-

ganized county which may fail or refuse to organize as a separate land district according to the provisions of an act recited in the caption, shall continue to form a part of the land district to which it was formerly attached until it shall have complied with the provisions of the aforesaid act." The second requires that the surveyor of a county not previously a separate land district shall not receive or file any certificate before procuring a certified copy of all files, applications and locations therein from the surveyor's office of the land district to which said county belongs, and file the same in his office for the inspection of any one interested therein.

We can not see what either of these provisions has to do with the question under consideration. Neither Young nor Hardeman county is shown to have been so situated as to make these provisions applicable to either of them at any time down to the date when the act of 1866 took effect. But if they had lost their rights as separate land districts, and continued to form parts of Jack district, the Legislature had the right to sever either of them from that district and attach it to another. At the time the act of 1866 was passed the boundaries of Young and Hardeman counties had been defined by statute, and they were distinct from each other, each having nine hundred square miles of territory. This territory was distinctly described in the statute and could be easily ascertained. It is therefore a fair interpretation of the act to hold that when the Legislature said Young county, it meant the county as thus defined, and not the entire district. Besides, in passing the act the Legislature had *judicial* purposes more particularly in view, and it was more likely in such case to provide for counties than for entire land districts.

But admitting that by Young county the Legislature meant not the county proper, but the entire land district, still under well known rules of construction the act attaches Hardeman to Montague and not to Jack county. Statutes must be so construed if possible as to give effect to all their provisions. Had the act stopped with its first section, and Young county meant Young land district, we might hold that this entire district was attached to Jack county. But as the act afterward proceeds to attach a well defined portion of Young district to Montague, to give effect to both provisions, we must treat the latter as an exception to the first, and give all of Young district to Jack county, except that part laid off by statute for the county of Hardeman,

and attach that to Montague. We can conceive of no construc-
tion that can be given to the statute which will attach Harde-
man county to Jack for surveying purposes.

The appellee contends that its adversary should have shown
that the surveyor of Montague county had complied with the
law we have recited as to obtaining maps, etc., of the lands in
Hardeman. The act of 1858 making this provision seems in-
tended for an organized county newly formed into a land dis-
trict, which had before formed part of a larger district, and not
to a county transferred from one district to another. But, if ap-
plicable to a case like the present, the presumption would be
that the surveyor had complied with the law and procured the
proper papers, and the burden was on the appellee to show to
the contrary.

We think that at the time the appellee's certificate was located
and surveyed this duty could not have been performed by the
surveyor of Jack county, and the location and survey were void.

It is claimed that this officer was at best the de facto surveyor
of Hardeman county. But to make one a de facto officer, he
must have some colorable right to the office, some appearance
of right which would lead the public without inquiry to suppose
him to be the officer he assumes to be. (Franco-Texas Land
Company v. Laigle, 59 Texas, 344; State v. Carroll, 38 Connecti-
cut, 449.) Thus, had the statute made the surveyor of Jack
county the surveyor of Hardeman also, and if the person claim-
ing to exercise that office had been generally recognized and re-
puted to be the surveyor of Jack county, and his acts as such
had been acquiesced in by the public, upon that supposition he
would have been the de facto surveyor, though his election had
been irregular or he had failed to take the oath of office, or the
law under which the election was held should afterward be de-
clared unconstitutional. But where there was upon the statute
book a law declaring that this officer should not make surveys
in Hardeman county, or, what was equivalent thereto, that an-
other officer was alone authorized so to do, no usurpation of that
authority by the surveyor of Jack county, in the teeth of the
statute—which the public was bound to know—could, though
generally acquiesced in, give him the character of a de facto
surveyor of Hardeman county.

Nor could the sanction of the general land office validate his
acts. The commissioner had no power prospectively to author-
ize his making the survey, and it follows, of course, that he could

not give effect to them by a subsequent ratification. The power to ratify implies the power to authorize. It is doing retrospectively what might have been done in advance of the performance of the act. (Morris v. State, 62 Texas, 741.) The Legislature could validate the surveys and issue patents upon them because it had power at that time to grant the land to the owners of the certificate, no matter how illegally the surveying might have been done. But it could not ratify so as to interfere with the rights of other parties to the land, accruing previous to the passage of the act by which the ratification was effected. (Wright v. Hawkins, 28 Texas, 452.)

It made no attempt to do this, but on the contrary it expressly saved the right of all such parties, of whom the appellant was one. The fact that such an act was passed is, however, significant. It was equivalent to a legislative declaration that the surveys were not made in accordance with law, and hence needed an act of the Legislature to make them valid. We think the court below erred in rendering judgment for the appellee, and for this error the judgment will be reversed and here rendered for the appellant for a recovery of the land in controversy, and of the costs of this and the lower court.

*Reversed and rendered.*