# SUPREME COURT OF TEXAS.

## TYLER TERM, 1887.

No. 6055.

### Leon & H. Blum *v.* R. H. Looney.

1. **Legislative Grant.**—When in a State Constitution there is found nothing to prohibit the Legislature from making a grant of land, the power exists to ratify a former act of legislation which attempted to make a grant which was prohibited by the Constitution then in force.
2. **Evidence.**—When one claims a benefit under a statute he should bring himself, in a suit that involves his right, by allegation and evidence, strictly within the terms and conditions of the law by virtue of which the benefit is claimed.
3. **Same.**—When the proviso to a confirming act of the Legislature restricts its benefits to designated persons who on account of meritorious service are to receive such benefits as a bounty, the fact that a claimant of such bounty belongs to the designated class, is in the nature of a condition precedent and must be shown, before he can recover.
4. **Actual Settler—Statute Construed.**—The act of March 31, 1883, (Laws of Eighteenth Legislature, page 38), confirming headrights and bounty warrants issued under former special laws which were passed between March, 1870, and April 17, 1876, was legal and valid, but in order to be effective to one claiming its benefits as a settler entitled to a headright, he must allege and show that he was an actual settler in Texas as far back as March 2, 1836. The issuance of a patent by the Commissioner of the General Land Office, can not afford evidence of this fact.

Appeal from Tyler. Tried below before the Hon. Wm. Kennedy.

*G. A. Kirkland* and *Scott & Levi,* for the appellant: That the act of March 31, 1883, by its express terms, is for the benefit of actual settlers and their assigns, without limitation as to the date of their settlement, they cited Laws Eighteenth Legislature, 38.

That the issue of a grant precludes inquiry as to the merits
and qualifications of the grantee, they cited, Hatch v. Dunn, 11
Texas, 709; Jackson v. Smith, 21 Texas, 723.

*Charles I. Evans*, for appellee, cited Sterrett v. Houston, 14
Texas, 153; State v. County Court Jackson County, 5 Western
Reporter (Mo.), 456; Holmes v. Anderson, 59 Texas, 482; Bacon
& Bates v. Russell, 57 Texas, 409; Cooley's Constitutional Lim-
itations (5 ed.), 471, marginal page 382, and authorities there
cited; Texas Constitution, 1870, article 14, section 4; Potter's
Dwarris on Statutory Construction, page 119, note 12.

WILLIE, CHIEF JUSTICE.    This case involves the title of the
appellants to five million six hundred and fifty-one thousand
nine hundred and fifty-eight square varas of land, lying in Tay-
lor county.    They claim the land under a head right certificate
granted to J. Lancaster by a special act of the Legislature of
April 30, 1873, which they say was ratified by a subsequent act
of March 31, 1883.    A patent for the land located and surveyed
under this certificate was granted May 10, 1877, and the appel-
lants are the owners of all the right of the patentee.    Appellee
claims under the location of a valid certificate made upon the
land March 2, 1885, and brought this suit to compel a survey of
the land and a return of the field notes made under that certifi-
cate.

The act of March 31, 1883, enacts that "all surveys and patents
by virtue of head right or bounty warrants issued under special
laws enacted after March 31, 1870, and prior to April 11, 1876, to
which there is no valid legal objection other than that such
special laws are supposed to be in conflict with the Constitution
then in force, are hereby validated and confirmed and declared
to be as binding upon the State as they otherwise would be if
such special laws had been permitted by the Constitution; * * *
provided  *  this act shall only apply to soldiers and heirs and,
actual settlers of Texas, and their vendees, to whom lands have
been granted."

The appellee claims that the act of April 20, 1873, was uncon-
stitutional, and that it could not be validated by the act of March
31, 1883.    He further claims that if the act of 1883 could validate
the certificate issued under the act of 1873, then it was incum-
bent upon the appellants, in order to entitle themselves to the

benefit of the former act, to show that J. Lancaster came within the meaning of its proviso.

On the other hand, the appellants, admitting the unconstitutionality of the act of 1873, contend that the Legislature, on the thirty-first of March, 1883, had the power to render it valid; that it was not incumbent on them to show affirmatively that Lancaster came within the proviso, but that, if he did not, the burden of showing this rested upon the appellee. They further contend that they proved all that was required by the proviso, in showing that Lancaster was an actual settler of Texas from the year 1853 to April 30, 1873; and further, that the fact that he was an actual settler, entitled to a head right certificate of the first class, was made to appear by showing that a grant had been made to him as such by the act of April 30, 1873, and by the issuance of a patent and certificate under said special act.

The court below held that the act of 1873 was validated by that of 1883; but that it was incumbent upon the appellants to show that Lancaster came within the proviso of the latter act, and that neither the passage of the special act nor the issuance of the patent and certificate under it, were sufficient evidence of that fact. Judgment was rendered for the appellee, and from that judgment this appeal is taken.

We think the court below was correct in holding that the special act of April 30, 1873, was validated by the general act of March 31, 1883. It is very true that a body not having the power to make a grant, has not the power to ratify one already made. But the converse of this proposition is also true, and decides the present question; for, at the time the healing act was passed, there was nothing in our Constitution prohibiting the Legislature from passing such an act as that by which a special grant of land was made to Lancaster. Having the right to make the grant, it had the power to ratify the one already made without authority. The right of the Legislature to validate such grants by the act of 1883 was recognized by this court in the case of Bates v. Bacon, 1 Southwestern Reporter, 256, and the question is too clear to require further discussion.

We think, too, that the court was correct in holding that it was incumbent on the appellant to show that Lancaster was an actual settler within the meaning of the proviso of the healing statute. The rule of pleading, as to penal and criminal statutes, is to the effect that an exception contained in such statutes must be negatived in pleading, but a proviso need not; which rule

seems to rest upon the ground that an exception is matter of defense, and must be shown by the party prosecuted. (Speers v. Parker, 1 Tenn. Rep., 141.) If that rule be applicable to civil statutes, it would seem that when one claims a benefit under such an act, he should bring himself fully within the terms and conditions upon which the benefit is to be granted. He occupies a like position to that of him who claims to be exempted from the unfavorable provisions of a statute.

But it is unnecessary to resert to analogies drawn from penal statutes to ascertain what construction should be given to the statute under decision. The intent and meaning of this act are apparent upon its face, and from the circumstances which brought about its enactment. The Legislature had passed several acts granting to individuals bounty and headright certificates at a time when it had no power to do so. These grants were utterly void. They could not be enforced against the government. Every certificate or warrant issued under these acts was so much blank paper, and the land upon which it had been located was, so far as these were concerned, unappropriated public domain. But the State was not unwilling that certain meritorious parties such as soldiers and their heirs and actual settlers and the issue of either to whom such grants had been made, should have the lands granted to them. Hence, when it regained the power to make the grants, the State exercised it in favor of these parties by confirming such grants as had already been made to them. This confirmation was a mere act of bounty on the part of the Government, and by every rule of interpretation must be confined to the classes of persons in favor of whom it was intended to operate.

It can not be claimed that any other persons except such as are named in the proviso are entitled to the benefit of the confirming act. The whole object of the act is to benefit them, and the fact that a claimant of land belongs to one of these classes of persons is in the nature of a condition precedent to his right to the land granted. Had the certificates never been issued under the former acts, and the healing statute had validated these acts with a proviso like that under consideration, it is very clear that the Commissioner of the General Land Office would have no right to issue the certificates without proof that the applicant possessed the qualifications therein prescribed. It would be unreasonable to contend that because the applicant was named in the act, he was to receive the certificate unless

the Commissioner could show that he did not possess the proper qualifications. In the cases provided for in the act, the certificates and, perhaps, the patents had already issued, but they were null and void. The new act called them into life upon certain conditions. Compliance with these conditions was as necessary to impart vigor to the surveys and patents as it would have been originally to call into existence the warrants and certificates upon which they were based. In fact, the statute must be read as if it in terms validated and confirmed only such surveys and patents by virtue of headright and bounty warrants, as had been issued under the special acts named for the benefit of soldiers and heirs, and actual settlers and their vendees.

The statute evidently intended to make the condition of being an actual settler a condition precedent to the right to the land under a headright certificate previously granted, and when the right is claimed, compliance with such a condition must of course be proved. Evidence of this fact is affirmative, and lies more particularly within the knowledge and reach of the grantee. To require the State or a subsequent claimant under the State to show the negative, would be to render the proviso of no force whatever.

It was not sufficient proof of this condition to show that Lancaster was an actual settler of Texas in 1853, and for any number of years thereafter. The special act of 1873, granted this certificate as a headright, and at the same time, granted him six hundred and forty acres as bounty. The certificate was of the first class issued only to single men residing in Texas, March 2, 1836; the bounty was for six months service in the army of the Republic. The clear intention of the statute was to give to Lancaster the amounts of land to which the Legislature thought him entitled for such residence and such services. Upon what evidence as to his merits the Legislature acted, is unimportant. Its act was void and all the proceedings which brought it about were of no effect for any purpose whatever. The act of March 31, 1883, made the previous act valid, but only upon condition that the beneficiary should show that he was a soldier or an actual settler, accordingly as he claimed the one grant or the other. As bounties were granted only to soldiers of the Republic of Texas, no proof that the claimant was a soldier in any other capacity, would have satisfied the condition; and we think it equally clear that the settlement necessary for Lancaster to obtain a headright certificate, must have dated as far back as the

the second of March, 1836, for first class headright certificates were not granted to settlers of a later date. If this be not so, then we must conclude that the Legislature, under the guise of rewarding a soldier of the Texas revolution, and a settler of Texas in its darkest days, has granted land to one having no merit not possessed by thousands of citizens to whom such bounty is denied. Such special acts expressly state, or necessarily imply the reasons for their passage. The reasons for this act are apparent upon its face, and we have no right to refer its passage to other causes.

Nor do we think that the mere fact that the Legislature passed a special act granting a headright certificate to Lancaster was proof that he was an actual settler of Texas on the second of March, 1836. If this were so, why insert the proviso in the confirmatory act? It became of no force whatever. It required that in order to entitle Lancaster to the one-third league of land previously granted him, it should appear that he was an actual settler at the proper time, and yet the simple fact that he had obtained the land would be full evidence that he had settled at such time. In other words, the Legislature demanded evidence that a party had a right to enjoy a grant of land, and intended, at the same time, that the fact that he did enjoy it should be full evidence of that right. The requirement as to the evidence in such case would be a useless thing. For the same reason, the issuance of the patent by the Commissioner of the General Land Office was not proof of the grantee's qualifications. The case is very different from that where a grant has been made by an officer having full authority over the subject matter. The law there presumes as to third persons, that the grant was made in a proper case. But here the grant was made by a body having no authority so to do. None of the ordinary presumptions of law can then be indulged in its favor.

Had it been unconditionally confirmed, these presumptions might arise; but as it was validated only upon condition that a fact which would ordinarily be presumed should be actually proved, as to this fact there can be no presumption in favor of the grantee.

We think the court below correctly decided all the issues submitted to it, and the judgment is affirmed.

*Affirmed.*

Opinion delivered June 17, 1887.*

---

*The opinions in this case and the following, both of the Austin Term, were not received by the Reporter until after the other cases of that term were reported.