### LOUISIANA RY. & NAV. CO. v. STATE.*
(No. 10038.)

Court of Civil Appeals of Texas. Dallas.
June 18, 1927.

Rehearing Denied Oct. 8, 1927.

1. **Constitutional law ⬁193—Legislature may legalize unauthorized acts of subordinate agencies where same would have been valid under legislative sanction previously given.**

Legislature, when not restricted by Constitution may legalize unauthorized acts and proceedings of subordinate agencies where same would have been valid if done under legislative sanction previously given.

2. **Highways ⬁90—Under Constitution, Legislature could create road districts outright, define their boundaries, and provide for organization and operation, or could have authorized creation by commissioners' court; "under legislative provision" (Const. art. 3, § 52).**

Language "under legislative provision," in Const. art. 3, § 52, committed to Legislature all questions relating to creation, size, boundaries, etc., of defined road districts, and Legislature could have created districts outright, defined their boundaries, and provided for their organization and operation, or it could have authorized their creation by order of commissioners' court without petition or vote of qualified electors.

3. **Highways ⬁90—That Legislature made futile attempt to provide for creation of road districts did not exhaust its power over subject (Const. art. 3, § 52).**

That Legislature made futile attempt to provide for creation of road districts neither subtracted from nor exhausted its power over subject, under Const. art. 3, § 52.

4. **Constitutional law ⬁92, 143, 193 — Highways ⬁90—Statutes validating road districts held not to violate obligation of contracts, or to destroy vested rights, or to be retroactive within prohibition of Constitution (Sp. Laws 1926 [1st Called Sess.] cc. 158, 160, 161; Acts 39th Leg. [1926] 1st Called Sess. c. 17; Const. art. 1, § 16).**

Sp. Laws 1926 (1st Called Sess.) cc. 158, 160, 161, and Acts 39th Leg. (1926) 1st Called Sess. c. 17, validating road districts created by county commissioners' courts and all proceedings leading up to issuance of bonds and their issuance, held not to violate obligation of contracts or disturb vested rights and were not retroactive, within prohibition of Const. art. 1, § 16.

5. **Constitutional law ⬁57—Statutes validating road districts created by commissioners' courts, under act declared invalid, held not to usurp judicial power and to frustrate judicial decision (Sp. Laws 1926 [1st Called Sess.] cc. 158, 160, 161; Acts 39th Leg. [1926] 1st Called Sess. c. 17).**

Sp. Laws 1926 (1st Called Sess.) cc. 158, 160, 161, and Acts 39th Leg. (1926) 1st Called Sess. c. 17, validating road districts created by county commissioners' courts and bonds issued by them, under act declared invalid by Supreme Court of the United States, held not to usurp judicial power and attempt to frustrate decision of Supreme Court, since only question determined by Supreme Court was that statute, under which road districts of class under consideration were organized, was repugnant to due process clause of Fourteenth Amendment and its judgment was res judicata on that issue only.

6. **Constitutional law ⬁105—Statutes validating road districts held not invalid because statutes deprived taxpayer of defense in pending suit for taxes, since taxpayer had no vested right in law (Sp. Laws 1926 [1st Called Sess.] cc. 158, 160, 161; Acts 39th Leg. [1926] 1st Called Sess. c. 17; Const. Bill of Rights, §§ 16, 19).**

Sp. Laws 1926 (1st Called Sess.) cc. 158, 160, 161, and Acts 39th Leg. (1926) 1st Called Sess. c. 17, validating road districts created by county commissioners' courts and bonds issued by them under statute later declared invalid, held not invalid, under Const. Bill of Rights, § 16, prohibiting retroactive laws, and section 19, guaranteeing due course of law, on

---

ground that statutes deprived taxpayer of defense to pending suit for collection of taxes, since taxpayer had no vested right in law or to any particular decision of case.

**7. Constitutional law ⚖➡43(1)—Taxpayer held estopped to raise constitutional objections to validity of tax assessment for redemption of bonds issued for road districts by conduct of itself and predecessors in title.**

Taxpayer *held* estopped to raise constitutional objections to validity of tax assessment for redemption of bonds issued for road districts by course of conduct of itself and predecessors in title, where neither taxpayer nor predecessors in title protested against organization of road districts, issuance of bonds, or levy of taxes, but voluntarily paid all taxes assessed prior to year 1925 and also received benefits in common with others of public improvements.

**8. Constitutional law ⚖➡43(1)—One may waive right under Constitution of United States.**

One may, by his acts or omissions to act, waive right which he might otherwise have under Constitution of United States as well as under statute.

**9. Courts ⚖➡489(1)—Whether right under United States Constitution has been waived is exclusively question for state courts.**

Question whether or not in particular case one has, by acts or omissions to act, waived right he might otherwise have had under Constitution of United States is exclusively for determination of state courts.

On Rehearing.

**10. Highways ⚖➡90—Validation of road districts created by commissioners' courts and bonds issued by them relates back and includes assessment for 1925 (Sp. Laws 1926 [1st Called Sess.] cc. 158, 160, 161; Acts 39th Leg. [1926] 1st Called Sess. c. 17; Rev. St. 1925, arts. 726–784).**

Validation under Sp. Laws 1926 (1st Called Sess.) cc. 158, 160, 161, and Acts 39th Leg. (1926) 1st Called Sess. c. 17, of road districts created by county commissioners' courts and bonds issued by them under invalid act *held* to relate back to first step taken in creation of road districts, under Rev. St. 1925, arts. 726–784, and includes all subsequent steps and proceedings taken, including assessment for 1925.

**11. Highways ⚖➡128—Taxpayer must pay penalty for failure to pay assessment under invalid law, where assessment was later validated and taxpayer had waived right to object to payment of tax.**

Taxpayer must pay penalty assessed for failure to pay assessment for redemption of bonds issued for road districts created under invalid law, where later act validated assessments and taxpayer and predecessors in title had waived right to object to payment of tax and was estopped to raise constitutional objections to creation of road districts or any related proceedings, including assessments.

Appeal from District Court, Collin County; F. E. Wilcox, Judge.

Suit between the Louisiana Railway & Navigation Company and the State, involving the validity of taxes levied and assessed against the former's property. From a judgment for the State, the Louisiana Railway & Navigation Company appeals. Affirmed.

B. M. McMahan, of Greenville, Touchstone, Wight, Gormley & Price, of Dallas, and Wallace Hughston, of McKinney, for appellant.

J. E. Abernathy and W. C. Dowdy, both of McKinney, and H. Grady Chandler, Asst. Atty. Gen., for the State.

LOONEY, J. This suit involves the validity of taxes levied and assessed against property belonging to appellant for the redemption of bonds issued for road districts Nos. 4, 8, and 9, Collin county, Tex. The trial court rendered judgment for the state, from which this appeal is prosecuted.

The bonds issued were sold by the commissioners' court and the proceeds used to build and operate macadamized, graveled, or paved roads and turnpikes in the districts.

These districts were organized under the provisions of the statute that was held by the Supreme Court of the United States, in Browning v. Hooper, 269 U. S. 396, 46 S. Ct. 141, 70 L. Ed. 330, to be repugnant to the due process clause of the federal Constitution.

After this decision was rendered, the Governor of Texas convened the Legislature in special session for the purpose, among others, of passing necessary legislation to cure, validate, and legalize state and county, commissioners' precinct, and special road district bonds or securities, the validity of which had been brought in question by the decision in Browning v. Hooper.

In response to the call of the Governor, the Legislature convened and enacted, among others, the following special and general curative acts that were approved by the Governor and became immediately effective, to wit: House Bill No. 68 (Sp. Laws 1926 [1st Called Sess.] c. 158) with reference to special road district No. 4; House Bill No. 70 (Sp. Laws 1926 [1st Called Sess.] c. 160) with reference to special road district No. 8; House Bill No. 71 (Sp. Laws 1926 [1st Called Sess.] c. 161) with reference to special road district No. 9; and also a general act, chapter 17, General Laws of the First Called Session, Thirty-Ninth Legislature (1926), having for its object the validation of all road bonds theretofore voted by any defined road district located wholly within a county. The effect of these acts was to legalize and validate the creation of the districts, establish their boundaries as selected by the petitioners and defined by the commissioners' courts, validate the elections at which bonds were voted, their issuance and sale and all orders and proceedings of court pertain-

ing to the creation of the districts as bodies corporate, the levy and assessment of taxes and the construction of roads and turnpikes.

These acts are so full and complete as to leave no doubt that, if the Legislature was clothed with constitutional power to enact them into laws, all proceedings, including the levy and assessment of taxes, involved in this suit, were validated and all vice in the original abortive attempts to create the districts was cured.

We will not discuss the validity of these road districts as originally created, for the reason, as we view the matter, the Supreme Court in Browning v. Hooper, condemned the statute under which they were created, but will confine the discussion to the other questions raised.

The attacks of appellant on the validity and effect of the special and general validating acts passed by the Legislature may, in our opinion, be reduced to the following: (1) That in so far as the validation of the respective districts and taxes involved in this suit was attempted, the acts violate the clause of the state Constitution that prohibits the making of retroactive laws (section 16, art. 1); (2) they violate appellant's right to due process of law guaranteed by section 1 of the Fourteenth Amendment of the federal Constitution; (3) they usurp judicial power and attempt to frustrate the decision of the Supreme Court rendered in Browning v. Hooper; and (4) they deprive appellant, retroactively, of a vested right of defense to the pending suit.

We will now consider these propositions.

[1] The doctrine is universally recognized that the Legislature, when not restricted by the Constitution, may legalize the unauthorized acts and proceedings of subordinate agencies, where the same would have been valid if done under legislative sanction previously given. Anderson v. Santa Anna Township, 116 U. S. 356, 6 S. Ct. 413, 29 L. Ed. 633. This doctrine, applied to the case at bar, means that, if in the first instance the Legislature was empowered by article 3, § 52, of the Constitution, to do or to authorize these things, it could later validate the proceedings although originally imperfect because of the invalid statute, and such validation is tantamount to an original authority. United States v. Heinszen, 206 U. S. 384, 27 S. Ct. 742, 51 L. Ed. 1103, 11 Ann. Cas. 688.

Was the Legislature clothed with this authority? The pertinent provisions of section 52, art. 3, are these:

" * * * Provided, however, that under legislative provision any, * * * defined district now or hereafter to be described and defined within the state of Texas, * * * upon a vote of a two-thirds majority of the resident property taxpayers voting thereon who are qualified electors of such district or territory to be affected thereby, in addition to all other debts, may issue bonds or otherwise lend its credit in any amount not to exceed one-fourth of the assessed valuation of the real property of such district or territory, * * * and levy and collect such taxes to pay the interest thereon and provide a sinking fund for the redemption thereof, as the Legislature may authorize, and in such manner as it may authorize the same, for the following purposes, to wit: * * * (c) The construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof."

[2, 3] The language "under legislative provision," found in the section just quoted, committed to the Legislature all questions relating to the creation, the size, boundaries, etc., of defined districts. The Legislature could have created districts outright, defined their boundaries, and provided for their organization and operation, or it could have authorized their creation by order of the commissioners' court, without petition or vote of qualified electors. The fact that the Legislature made a futile attempt to provide for the creation of these road districts neither subtracted from nor exhausted its power over the subject.

Chief Justice White in United States v. Heinszen, 206 U. S. 382, 384, 27 S. Ct. 742, 745, 51 L. Ed. 1098, 1102 (11 Ann. Cas. 688) said:

"That where an agent, without precedent authority, has exercised, in the name of a principal a power which the principal had the capacity to bestow, the principal may ratify and affirm the unauthorized act, and thus retroactively give it validity when rights of third persons have not intervened, is so elementary as to need but statement. That the power of ratification as to matters within their authority may be exercised by Congress, state governments, or municipal corporations, is also elementary."

Judge McKenna in Charlotte, etc., v. Welles, 260 U. S. 8, 11, 43 S. Ct. 4, 67 L. Ed. 100, revealed the necessity for the rule from a governmental standpoint. He said:

"The general and established proposition is that, what the Legislature could have authorized, it can ratify if it can authorize at the time of ratification [citing authorities], and the power is necessary, that government may not be defeated by omissions or inaccuracies in the exercise of functions necessary to its administration." Page 4.

Prior benefits, as in the case at bar, are often mentioned as a consideration for this class of legislation. The bonds issued for these road districts were sold, and the proceeds used by the commissioners' court to build macadamized, graveled, or paved roads and turnpikes in the districts that have been used by the public constantly since their construction.

In Forbes v. Board of Com'rs, 258 U. S. 338, 42 S. Ct. 325, 66 L. Ed. 647, Justice Holmes, speaking of the power of Congress

to ratify the collection of a tax made without authority of law, said:

"A tax may be imposed in respect of past benefits, so that if instead of calling it a ratification Congress had purported to impose the tax for the first time the enactment would have been within its power."

In Ritchie v. Franklin County, 22 Wall. 67, 22 L. Ed. 825, Mr. Justice Davis said:

"The bonds here were issued under a supposed authority, and no one interposed an objection. The taxpayers rested until the mischief was done and then tried to get relief. It is certainly not unjust to them that the Legislature should say, 'You must pay for an expenditure which you saw incurred and could have prevented, but did not.'"

These cases are by no means sporadic, but are typical of many that could be cited to the same effect. They show that legislative validation in situations presented by the facts of this case is simply the application of the doctrine of ratification known to the law of agency; that past benefits received justify the enactment of such statute; and that such procedure is necessary in order to prevent mere omissions and inaccuracies from defeating important purposes of government.

[4] But appellant contends that these acts are void because retroactive in violation of section 16 of article 1 of the Texas Constitution. In New Orleans v. Clark, 95 U. S. 644, 24 L. Ed. 521, 522, the Supreme Court of the United States had under consideration a validating act claimed to be in violation of a similar provision of the Louisiana Constitution.

In disposing of this contention, the court, through Justice Field, said:

"The Constitution of Louisiana of 1868 [article 110] which provides that no retroactive law shall be passed, does not forbid such legislation [meaning the validating act under consideration]. A law requiring a municipal corporation to pay a demand which is without legal obligation, but which is equitable and just in itself, being founded upon a valuable consideration received by the corporation, is not a retroactive law—no more so than an appropriation act providing for the payment of a pre-existing claim. The constitutional inhibition does not apply to legislation recognizing or affirming the binding obligation of the state, or of any of its subordinate agencies, with respect to past transactions. It is designed to prevent retrospective legislation injuriously affecting individuals, and thus protect vested rights from invasion."

In Shields v. Clifton Hill Land Co., 94 Tenn. 123, 148, 28 S. W. 668, 674, 26 L. R. A. 509, 517, 518 (45 Am. St. Rep. 700), the Supreme Court of Tennessee reviewed an act, the validity of which was challenged on the ground that it was prohibited by a constitutional provision against retroactive laws. After quoting the provision under consideration, the court said:

298 S.W.—30

"This does not mean that absolutely no retrospective law shall be made, but only that no retrospective law which impairs the obligation of contracts, or divests or impairs vested rights, shall be made [citing authorities]. It does not inhibit retrospective laws made in furtherance of the police power of the state; and, generally, it does not prohibit remedial legislation, nor stand in the way of statutes passed to cure some defect or omission in former proceedings or enactments, or in the case of parties attempting to comply therewith" (citing numerous authorities).

Our own Supreme Court, in Morris v. State, 62 Tex. 728, 741, held that validating ordinances retrospective in their operation did not offend the Constitution in this respect. The court said:

"It is said to be a general rule that 'it is competent for the Legislature to give retrospectively the capacity it might have given in advance, and to dispense retrospectively with any formality it might have dispensed with in advance.' Cooley, Prin. of Const. Law, 325. This want of capacity may as well be the lack of power in a corporation to make the contract as in an individual; and the only restriction as to ratifying its defective execution is that the defect must not be some omission with which the Legislature could not dispense. Wade on Retroactive Laws, § 257."

To the same effect are Nolan County v. State, 83 Tex. 182, 199, 200, 17 S. W. 823, and Blum v. Looney, 69 Tex. 1, 3, 4 S. W. 857.

As we view the matter, the Legislature did not purport or attempt to legalize the unconstitutional provision of the statute under which ineffectual attempts were made to organize road districts. That statute is as vulnerable now as it was prior to the enactment of the curative acts, and no road district could be validly organized thereunder. What the Legislature did attempt, and in our opinion accomplished, was the validation of road districts that were invalid at the time of their organization because not organized according to the provisions of a valid law.

These acts neither violate the obligation of contracts, disturb vested rights, nor are they retroactive within the prohibition of the Constitution. They are remedial measures, rendered necessary on account of the alarm and threatened injury to public securities that resulted from the decision of the Supreme Court in Browning v. Hooper.

At this time, however, we do not regard the validity of these acts an open question. Our Supreme Court in Tom Green County v. Moody, 289 S. W. 381, and in Anderson County Road District No. 8 v. Pollard (Sup. decided June 4, 1927) 296 S. W. 1062 (not [officially] reported), affirmed their validity. The court, as is apparent from the opinions in these cases, was controlled by the universally accepted doctrine that what the Legislature could have authorized in the first instance it could later ratify.

The Anderson County Case was a manda-

mus proceeding to require the Attorney General to approve $500,000 road bonds previously voted by a district organized under the same statute condemned by the Supreme Court in Browning v. Hooper. At the special session hereinbefore referred to, the Legislature passed an act validating the creation of this road district, all proceedings leading up to the issuance of the bonds, and also the bonds. The Legislature also enacted a general statute (chapter 17, First Called Session of the Thirty-Ninth Legislature), and in addition chapter 10, a general law, having for its object the validation of all road bonds not issued and sold that had theretofore been voted by any political subdivision or road district. After stating the case, the court said:

"The validating acts are so comprehensive in their terms that if the Legislature had the constitutional power to pass them there can be no doubt that the bonds here involved were validated and that the Attorney General ought to approve the record. That the Legislature did have the constitutional power to pass these validating acts we regard as well settled by the authorities."

After citing authorities, the court continued:

"Having the power to create this road district in the first instance and to authorize the issuance of bonds and levies of taxes in connection therewith, it necessarily follows, under the authorities we have cited, that the Legislature had the right to validate the entire proceeding by the enactment of the laws cited and quoted from."

The court gave a lengthy review of cases in point, and concluded as follows:

"Under the authorities we are convinced that the curative acts passed by the Legislature and heretofore quoted in this opinion were valid and constitutional exertions of legislative power, and were and are effective to make valid the bonds and all proceedings under which they were issued involved in this case. It follows, we think, that it is the duty of the Attorney General to approve the bond record as prayed for, and that the writ of mandamus ought to issue."

[5] But appellant contends that these acts usurp judicial power and attempt to frustrate the decision of the Supreme Court. We do not think so. The only question determined by the Supreme Court in Browning v. Hooper was to the effect that the statute, under which road districts of the class now under consideration were organized, was repugnant to the due process clause of the Fourteenth Amendment. Its judgment therefore was res adjudicata on that issue, and none other. In the case of Utter v. Franklin, 172 U. S. 416, 19 S. Ct. 183, 43 L. Ed. 501, a similar contention was made. In disposing of the matter, Justice Brown said:

"The fact that this court had held the original Pima County bonds invalid does not affect the question. They were invalid because there was no power to issue them. They were made valid by such power being subsequently given, and it makes no possible difference that they have been declared to be void under the power originally given. The judgment in that case was res adjudicata only of the issues then presented, of the facts as they then appeared, and of the legislation then existing."

This contention is, in our opinion, without merit.

[6] Appellant insists that it could have defeated the suit for the collection of these taxes prior to the passage of the validating acts, and that it has been deprived by this legislation of this vested right of defense in violation of the Bill of Rights, § 16, the prohibition against retroactive laws, and section 19, the guaranty of due course of law.

This contention is necessarily based on the idea that appellant had a vested right in the status of the law under which these districts were organized. That law was not changed; its status to-day is the same as before these enactments. But appellant had no vested right in this law, nor to any particular decision of the case. The case must be determined on the law as it existed when judgment was rendered. This rule is clearly announced in United States v. Heinszen, 206 U. S. 387, 27 S. Ct. 747, 51 L. Ed. 1104, 11 Ann. Cas. 688. Chief Justice White made the following contribution on this subject:

"Considering how far the bringing of actions would operate to deprive government of the power to enact curative statutes which, if the actions had not been brought, would have been unquestionably valid, Cooley, in his Constitutional Limitations, says (7th Ed. p. 543): 'Nor is it important, in any of the cases to which we have referred, that the legislative act which cures the irregularity, defect, or want of original authority, was passed after suit brought, in which such irregularity or defect became matter of importance. The bringing of suit vests in a party no right to a particular decision [citing authorities]; and his case must be determined on the law as it stands, not when the suit was brought, but when the judgment is rendered [citing authorities].'"

In Windsor v. City of Des Moines, 110 Iowa, 175, 179, 81 N. W. 476, 477, discussing a similar contention, the court said:

"It is no objection to such legislation [a validating act] that it was passed after action is commenced disputing the validity of the act. As a rule, every case must be determined on the law as it stands at the time judgment is pronounced. Of course, the Legislature cannot impair the obligation of contracts, nor by subsequent legislation disturb vested rights. But the bringing of suit vests no right in a particular decision."

Also, see Grim v. Weissenberg, 57 Pa. 433, 98 Am. Dec. 237; Shields v. Clifton Hill Land Co., 94 Tenn. 123, 28 S. W. 668, 26 L. R. A. 509, 517, 518, 45 Am. St. Rep. 700.

In view of these authorities, which seem to be very much in point, we overrule this contention.

[7] But there is another reason that goes behind these proceedings why the judgment of the trial court should be affirmed. Appellant, in our opinion, is estopped to raise constitutional objections to the validity of the tax assessment because of the course of conduct of itself and predecessors in title. On this issue the facts are these: There were two bond issues for district No. 4 of $450,-000 each, one in 1913, and the other in 1922; two for district No. 8, one in 1914 for $200,-000, and one in 1919 for $400,000; two issues for district No. 9, one for $90,000 in 1914, and the other for $20,000 in 1920. The bonds were sold by the commissioners' court of Collin county, and are held by various and sundry persons residing in different states of the Union. The proceeds arising from the sale of the bonds were used by the commissioners' court to construct and operate roads in the respective districts that have been in constant use by the public since their construction. Neither appellant nor its predecessor in title protested against the organization of any of these districts, the issuance of the bonds, the levy of the taxes, or in any manner opposed any of these proceedings before the commissioners' court of Collin county, or before any other judicial tribunal; on the contrary, they have voluntarily paid all taxes assessed against the property prior to the year 1925, and the same has received in common with other property such incidental benefits as resulted from the public improvement.

[8, 9] That a person may by his acts, or omissions to act, waive a right which he might otherwise have under the Constitution of the United States as well as under a statute is well settled by the decisions of the Supreme Court of the United States. The question as to whether or not in a particular case such right has been lost by a course of conduct is exclusively for the determination of the courts of the state. Eustis v. Bolles, 150 U. S. 362, 14 S. Ct. 131, 37 L. Ed. 1111; Pierce v. Somerset Ry. Co., 171 U. S. 647, 648, 19 S. Ct. 64, 43 L. Ed. 316, 319; Wight v. Davidson, 181 U. S. 371, 377, 21 S. Ct. 616, 45 L. Ed. 900, 902; Shephard v. Barron, 194 U. S. 553, 24 S. Ct. 737, 48 L. Ed. 1115; Pierce v. Phœnix, 259 U. S. 125, 42 S. Ct. 440, 66 L. Ed. 855; Muscatine Lighting Co. v. City of Muscatine (D. C.) 256 F. 932; Dunn v. Ft. Bend County (D. C.) 17 F. (2d) 329.

In Wight v. Davidson, supra, the Supreme Court used the following language on the question now under discussion:

"The constitutional right against unjust taxation is given for the protection of private property, and may be waived by those affected who consent to such action to their property as would otherwise be invalid. 'Under some circumstances, a party who is illegally assessed may be held to have waived all right to a remedy by a course of conduct which renders it unjust and inequitable to others that he should be allowed to complain of the illegality. Such a case would exist if one should ask for and encourage the levy of the tax of which he subsequently complains; and some of the cases * * * go far in the direction of holding that a mere failure to give notice of objections to one who, with the knowledge of the person taxed, as contractor or otherwise, is expending money in reliance upon payment from the taxes, may have the same effect' " (citing authorities).

The case of Dunn v. Ft. Bend County, supra, was from the United States District Court for the Southern District of Texas, a three-judge court composed of Circuit Judge Foster and District Judges West and Hutcheson. Judge Hutcheson wrote the opinion for the court. Plaintiff sought a decree enjoining certain public officials of Ft. Bend county from using proceeds derived from the sale of bonds of Ft. Bend county road district No. 1 and directing them to pay plaintiff, as holder of the bonds, moneys derived from their sale, plaintiff tendering back the bonds to the district. The ground on which the suit was based was that the law under which the road district was organized and bonds issued was invalidated by the decision of the Supreme Court in Browning v. Hooper, supra. Equitable relief was denied on the ground, among others, of estoppel. Judge Hutcheson said:

"There are other considerations, however, which make it more clear that plaintiffs present no equity whatever for relief. The first of these is that the invocation of the Fourteenth Amendment is a privilege; that the fact that a statute may be obnoxious to the Fourteenth Amendment as to a particular person does not mean at all that it may be so as to another; and that this right to invoke the Fourteenth Amendment, being a personal privilege, may be lost by election, waiver, or estoppel.

"The facts in this case, in the light of the decisions, leave no doubt that any person who might at any time have questioned the validity of the district has long since lost that right by estoppel, waiver, or election; the district having existed as a going district for more than 16 years."

We have carefully considered all assignments and propositions, and, finding no reversible error, the judgment of the trial court is affirmed.

Affirmed.

### On Rehearing.

Appellant concedes, in argument on rehearing—a proposition strenuously combatted on submission of the cause—that the validating acts of the Legislature under consideration are unobjectionable in so far as they validate the creation of the road districts, the issuance of the bonds, and other proceedings, including current and prospective assessments, but vigorously contends that the assessment for 1925 in suit was and is void and unconstitutional in that it was not within the power of the Legislature in 1926 to retroactively validate the same, and its attempt

to do so violated section 16 of the Bill of Rights.

The statutes under which the road districts in question were created (found in chapter 3, title 22, Acts 1925 [Rev. St. 1925]) provide that, after certain essential preliminary steps have been taken and before any road bonds are put on the market for sale, the commissioners' court of the county in which such election was held shall levy a tax on the taxable property of the district sufficient to pay the interest on the bonds and to produce a sinking fund to pay the same at maturity.

This statute also provides that it shall be the duty of the tax collector and assessor of the county to assess and collect the tax for the districts in the same manner and at the same time as other taxes.

These statutory provisions were followed in the creation of the road districts, the issuance and sale of the bonds, the levy of the tax prescribed, and in the annual assessments and collection of taxes.

The remedial acts under review validated these districts, as selected by the petitioners and defined by the commissioners' court, the elections at which bonds were voted, the tax levies and assessments, and all other orders of court and proceedings pertaining thereto.

The levy, the act that determined the tax that should be laid on all taxable property in the district, was one and an indivisible act, and was taken before the bonds were ever put upon the market for sale, and comprehended all taxes to be collected each year during the life of the bonds.

The annual assessment of property required by the statute is simply the procedure by which the taxpayers' taxable property is officially listed, the value thereof fixed in order to determine the amount of taxes, previously levied, to be paid by the individual taxpayer.

[10] The period of time covered by the life of the bond, for the payment of which at maturity a sufficient tax was levied, is one unit and is not divisible into as many units as there may be years involved, hence an assessment for any particular year of this period is not different in its nature, nor can it be differentiated from any other assessment, whether it be prior, current, or prospective. It is our opinion, therefore, that the validation relates back to the first step taken in the creation of the road districts and includes within its scope all subsequent steps and proceedings taken, including the assessment for 1925.

Learned counsel for the appellant criticizes the court for failing to comment on certain cases cited in its brief. We copy the following excerpts from the written argument on file:

"Now we have at least three well-considered cases by the Supreme Court of Texas holding again and again and again that under section 16 of our Bill of Rights an assessment cannot be retroactively validated or imposed. These cases are, respectively, State v. Railway Co., 100 Tex. 175, 97 S. W. 71; Hutchinson v. Patching, 103 Tex. 497, 129 S. W. 603, 131 S. W. 400; Castleberry v. Coffee (Tex. Com. App.) 272 S. W. 767.

"This court in its opinion did not mention these cases. Why? Why has this uniform construction of section 16 of our Bill of Rights been thus repudiated without mention of it? Why has the word 'retroactive' in that section so suddenly lost the virtue it was declared to have by our Supreme Court in these three cases? Why have not we lawyers the right to demand some explanation of this? Have we not such right even as citizens? When our fundamental law, or the construction of our fundamental law, is thus suddenly changed, should not the court changing it point out the errors in the opinion of the Supreme Court thus overruled? For 50 years our highest court has told us with unanimous voice that a void assessment cannot be validated retroactively. But now we are suddenly told that not only can such void assessment be thus retroactively validated, but also that a citizen who resists invasion of his constitutional immunities in the premises can be penalized for such resistence. And we are not told why."

At another point in the argument the following occurs:

"Thus the only question properly before this court in this case on the record made is whether the Texas Legislature could in 1926 validate the admittedly void assessments for 1925. At least three several times our Supreme Court has declared that section 16 of our Bill of Rights inhibited such retroactive validation. Respectfully we ask this court either to follow these precedents, or to point out to us wherein they are not in point."

In regard to the matter contained in these excerpts, we will say that this court is only required to file "a conclusion of fact and law," and we believe we have complied with this statutory requirement in this case. Article 1873, Acts 1925 (Rev. St. 1925). Besides it would ordinarily lengthen the opinion and burden the reports uselessly, if the court should comment upon and distinguish cases cited in order to show that they are not in point.

However, with due respect for the opinion of counsel who presented the argument, we cannot agree that either of the cases cited is in point.

In only one of the cases—that of Hutchinson v. Patching, 103 Tex. 497, 129 S. W. 603, 131 S. W. 400—was the question of validation involved, and on this point Judge Brown, for the Supreme Court, says:

"The levies of taxes made by the trustees of the Tulia independent school district of 25 cents and another of 50 cents on the $100 valuation of property in that district were each void, because each amount so levied was in excess of the limitation placed upon the power of such districts by section 3, art. 7, of the Constitution of the state, as it then was. Neither of the two amendments to the Constitution, copied above,

purport to make valid the levies of taxes in such districts where they were by the provisions of the Constitution invalid. Therefore the levies made by the trustees in the Tulia school district are still void and cannot be enforced."

It is obvious from this language that, in the amendment to the Constitution mentioned, no attempt was made to validate the invalid levies, and hence no question arose under section 16 of the Bill of Rights. It is equally obvious that the void tax levies could have been validated by constitutional amendment, but were not simply because no attempt was made to do so.

The principle underlying the doctrine of validation is this—where an agent, without precedent authority, has, in the name of a principal, exercised a power which the principal had the capacity to bestow, such unauthorized act may be ratified and validated, and thus retroactively given validity; and this doctrine as to matters within the scope of their authority applies as well to Congress, state Legislatures, and municipal corporations.

An examination of the other two cases mentioned will show that no validating act was involved, and, therefore the question did not enter the discussion. The case of the State v. G. H. & S. A. R. Co., 100 Tex. 153, 175, 97 S. W. 71, was brought under an act of the Twenty-Ninth Legislature (chapter 141), known as the "Gross Receipts Tax Law," that imposed a tax on those owning, operating, or controlling railway lines in the state. The act became effective July 15, 1905. In the suit the state contended that judgment should have been rendered in its favor for the whole of the annual tax for the year 1905, notwithstanding the statute did not become effective until July 15th of that year. In disposing of this contention, the Supreme Court said:

"The state claims that the trial court erred, (1) in not entering judgment in its favor for the whole of the annual tax for the year 1905.

"Section 16, art. 1, of our Constitution, is in these words: 'No bill of attainder, ex post facto laws, retroactive laws, or any law impairing the obligations of contracts shall be made.' If the act in question be construed to embrace the whole of the year 1905 and entitles the state to collect the full annual tax for that year, it would confer upon the state a right against the railroads which did not exist before the law took effect, and it would impose upon each railroad a burden to which it was not liable before the law became effective. It is quite plain that the act comes within the provision of the section of the Constitution above quoted and is retroactive in its effect." Sutherland v. De Leon, 1 Tex. 250, 46 Am. Dec. 100.

Thus it is apparent that the doctrine of ratification did not enter the case; the question was whether the state could impose and collect a tax for the fraction of the year prior to the effectiveness of the statute; that is, before there existed a law creating an obliga-

tion. We readily agree that the Supreme Court rendered a correct decision.

The other case cited by appellant (Castleberry v. Coffee, 272 S. W. 767, decided by the Commission of Appeals) involved the identical principle discussed by the Supreme Court in State v. Railway, supra. In the Castleberry-Coffee Case there was under review certain purported ordinances of the city of Perryton that attempted to levy taxes on the taxable property of the city for the year 1921. These attempted ordinances were held void for the reason that they did not comply with the statute in regard to the enacting clause—in other words, they were not ordinances, hence no tax was levied thereby.

On March 14, 1922, the board of aldermen of Perryton adopted an ordinance, correct in form, in which attempt was made to levy a tax on all taxable property of the city "as the same existed on the 1st day of January, 1921, * * * for the purpose of raising revenue for general purposes for the year 1921." The contention was made that this ordinance violated section 16, art. 1, of the Constitution, against the making of retroactive laws.

In disposing of this contention, Judge Randolph, for the Court of Civil Appeals, used this language (258 S. W. 889, 892):

"The levy by the ordinance No. 3, being for the year 1921, which had fully expired, was an attempt to retroactively declare a liability in conflict with section 16, art. 1 of the state Constitution, and as to such expired time is void" (citing State v. G. H. & S. A. R. Co., 100 Tex. 175, 97 S. W. 71).

The Commission of Appeals simply affirmed this holding of the Court of Civil Appeals, 272 S. W. 767.

We readily assent to the correctness of the decisions of the courts in these cases, but fail to find that either is in point or supports the contention of appellant.

On the other hand, the following Texas cases announce with clearness the doctrine that remedial statutes of the nature of those under consideration are not retroactive laws, within the meaning of section 16 of article 1 of the Constitution, and in our opinion fully sustain the holding of this court, The cases are: Morris & Cummings v. State, 62 Tex. 728, 740, 741; Cox v. H. & Texas Central, etc., 68 Tex. 226, 230, 231, 4 S. W. 458; Blum v. Looney, 69 Tex. 1, 3, 4 S. W. 857; Nolan County v. State, 83 Tex. 182, 199, 200, 17 S. W. 823; Wright v. Jones, 14 Tex. Civ. App. 423, 38 S. W. 249, 251, writ of error denied; Haynes v. State, 44 Tex. Civ. App. 492, 99 S. W. 405, 409, writ of error denied.

[11] Appellant makes the further contention that, at all events, the court erred in affirming the judgment below as to the penalty that was assessed for its failure to pay the assessment involved in the suit.

This contention would be sustained but for the fact that we hold, for the reasons set

out in the original opinion, that at the time, and prior to the accrual of the penalty imposed, appellant and its predecessors in title had waived the right to object to the payment of the tax, and was and is now estopped to raise constitutional objections to the creation of the road districts or to any related proceedings, including the assessments for 1925.

Having given appellant's motion for rehearing careful consideration, and finding no reason to disturb in any way our original decision, the motion is overruled.

Overruled.